AMELIA KERR, Executrix, etc., et al., Appellants, *v.* EDWARD H. DOUGHERTY, Trustee, etc., et al., ALMIRA E. HOLAHAN, Respondent.

A corporation chartered by special act may, by appropriate language, be made subject to the provisions of the general act of 1848 (chap. 319, Laws of 1848, amended by chap. 51, Laws of 1870), providing for the incorporation of benevolent and other societies, which restricts the capacity of such corporations to take under a will.

The provision of the act of 1870 (chap. 129, Laws of 1870), amending the act of 1839 (chap. 99, Laws of 1839), incorporating the Union Theological Seminary of the city of New York, which limits the power of that corporation to take and hold by gift, grant or devise, by subjecting it "to all the provisions of law relating to devises and bequests by last will and testament," make applicable to said corporation the provision of said act of 1848 (§ 6), which declares that no devise or bequest to any corporation formed under it, by one leaving wife, child or parent, "shall be valid in any will which shall not have been made and executed at least two months before the death of the testator." (RAPALLO and EARL, JJ., dissenting.)

The said provision of the amended charter also includes the provisions of the act of 1860 (chap. 360, Laws of 1860), "relating to wills," prohibiting devises or bequests to certain societies to more than one-half of the testator's estate.

The said act of 1860 is not inconsistent with said two months clause in the act of 1848, and does not repeal it.

The effect of the amendment of said charter, in the particular above mentioned, was not destroyed by the amendment of 1870 (chap. 51, Laws of 1870), to said act of 1848.

Accordingly *held* (RAPALLO and EARL, JJ., dissenting), that a bequest to said corporation in the will of a man who died within a month after the execution thereof, leaving a wife surviving, was void.

Also *held* (RAPALLO and EARL, JJ., dissenting), that a bequest to the New York City Mission and Tract Society was void because of a similar provision of its charter (chap. 63, Laws of 1866).

The provision of the act of the Legislature of Pennsylvania of 1853, relating to corporations, etc., which prohibits devises or bequests to any body politic, or person in trust, for religious or charitable uses, unless by will executed at least one month before the death of the testator, relates to and affects the power to take as well as the power to devise (RAPALLO and EARL, JJ., dissenting).

A religious corporation, therefore, of the said State cannot take a bequest to it in trust for such purposes contained in a will executed in this State by a citizen thereof within one month of his death; and such a bequest is void (RAPALLO and EARL, JJ., dissenting).

*Chamberlin* v. *Chamberlin* (43 N. Y., 424), distinguished.

The right of a corporation to take by devise or bequest is subject to the general laws of the State in regard thereto, passed subsequent to its incorporation.

The will of K., which contained various legacies, some held void as above, gave to his wife the net income derived from his estate, after payment of the legacies, during her life, and the principal left of the estate after her death to various societies. *Held* (RAPALLO and EARL, JJ., dissenting), that the sums attempted to be bequeathed by the void legacies were undisposed of by the will, and were to be distributed as in case of intestacy.

The general rule that in a will of personal property a general residuary clause carries whatever is not otherwise legally disposed of, does not apply to a residuary clause limited by its terms to what remains after payment of specific legacies; in such case if any of the legacies are void there is another residuum which is undisposed of.

In the interpretation of a residuary clause in a will the court will look not only at the language employed but the surrounding circumstances to determine what the intention of the testator was.

(Argued May 23, 1879; decided January 13, 1880.)

THESE are appeals by the plaintiffs and various of the defendants from a judgment of the General Term of the Supreme Court, in the first judicial department, which modified and affirmed as modified a judgment, entered upon a

decision of the court on trial at Special Term.    (Mem. of decision below, 17 Hun, 341.)

This action was brought by plaintiffs as executors of the will of Henry A. Kerr, deceased, to obtain a construction of said will.    The will was executed December 8, 1876; the testator died December 31, 1876; he was at the time of the execution of the will a resident of the city of New York, where he died.

The will is as follows :

" I, Henry A Kerr, considering the uncertainty of this mortal life, and being of sound mind and memory, do hereby make, publish and declare this instrument to be my last will and testament.

" I. — My will is that all my just debts and personal expenses shall be paid out of my estate by my executrix and executor herein named, as soon as practicable after my decease.

" The legacies are to be paid as soon as the amounts can be collected out of funds now invested on bond and mortgage at the city of Grand Rapids, Michigan.

" II. — I give and bequeath unto Edward H. Dougherty, son of William C. Dougherty, deceased, the sum of $10,000 in trust, for the sole use and benefit of his two daughters, Amelia Kerr and Edda H. Dougherty, to be given to them at such times and in such sums as he shall think proper, share and share alike.    If either of them die before receiving her share, then the balance is to be given to the survivor.

" III. — I give and bequeath unto Mrs. Almira E. Holahan, $1,000, which some is to be credited to her on the book now kept by me of the house No 146 West Fourth street, and deducted from the amount there charged.

" IV. — I give and bequeath unto Maria Dunkin, the daughter of Thomas J. and Elizabeth Dunkin, $1,000.

" V. — I give and bequeath to the directors of the Union Theological Seminary of the city of New York, the sum of $10,000 to be invested as a permanent fund in stocks or bonds of the United States or of the State of New York,

the interest of which shall be given as support to such student or students of the said seminary studying with a view to the Christian ministry as shall be selected for the gift by the directors.

"VI. — I give and bequeath to the Presbyterian Board of Foreign Missions the sum of $5,000.

"VII. — I give and bequeath unto the Presbyterian Board of Home Missions the sum of $5,000.

"VIII. — I give and bequeath unto the New York City Bible Society the sum of $1,000.

"IX. — I give and bequeath unto the New York City Mission and Tract Society the sum of $1,000.

"X. — I give and bequeath unto the Trustees of the General Assembly of the Presbyterian Church of the United States of America, for the use of the fund of disabled ministers, the sum of $5,000.

"XI. — I give and bequeath unto the Board of Trustees of the Scotch Presbyterian Church of which I am a member, the sum of $1,000 for church purposes.

"XII. — I give and bequeath unto the sabbath schools of the above named church, the sum of $1,000 to be divided as the pastor shall direct.

"XIII. — I give and bequeath unto the Presbyterian Hospital the sum of $1,000, for which aid and care is to be given to any of the members of the Scotch Presbyterian Church, who may require aid in sickness.

"XIV. — I give and bequeath unto my pastor, the Rev. Samuel M. Hamilton, the sum of $1,000.

"XV. — I give and bequeath unto my beloved wife, Amelia Kerr, all the net income that may be derived from my estate after my decease, and after the legacies are paid off, she is to receive the same during her life-time. Also, I give her all the furniture, useful and ornamental, in the building No. 10 East Ninth street, also in the building No. 146 West Fourth street, which I now own, also all personal jewelry and clothing which I now own or may own at the time of my death.

" XVI.— I hereby appoint Amelia Kerr, my wife, and Walter Carter, present elder in the Scotch Presbyterian Church, as my executrix and executor.

" I hereby give them full power and authority to grant, alien, sell, and convey any and all lands and leasehold estates owned by me, or to which I shall be entitled, or in which I shall have any interest at the time of my death, and to execute, acknowledge, and deliver good and sufficient conveyances thereof, and apply the proceeds of such sales in conformity to the provisions of this my last will and testament.

" XVII.— I do further hereby will and declare that the bequests herein made to my said wife, Amelia Kerr, are in lieu of all dower, or claim of dower, in or to my estate.

" And I do hereby revoke all former or other wills and testaments at any time heretofore by me made, and I do hereby declare this instrument to be my last will and testament.

" XVIII.— I give and bequeath all the principal left of my estate, after the death of my wife, Amelia Kerr, to the societies, seminary, or institutions named in the fifth, sixth, seventh, ninth and tenth articles, or bequests to be divided according to the several amounts so bequeathed *pro rata*.

" In witness whereof, I have hereunto subscribed my name and affixed my seal this 8th day of December, 1876.

[L. S.]                    "HENRY A. KERR."

The Special Term held that the legacies contained in the fifth, seventh, eighth, ninth, tenth, twelfth and thirteenth clauses of the will were void, and that the sums, so bequeathed, belonged, as estate undisposed of, to the widow and next of kin.    That the eighteenth clause was valid as a bequest to the legatee named in the sixth clause, and gave to said legatee five twenty-sixths of the principal left after the death of the testator's widow, but in all other respects that said clause was void.

The modification by the General Term was simply as to the time from which the legacies drew interest, it holding

that interest was chargeable only after a year from the death of the testator.

Further facts appear in the opinion.

*George De Forrest Lord*, for executors, appellants. Unless a contrary intention is actually expressed in or can be clearly inferred from the will, all property or interests not covered by other valid and efficient dispositions, fall into and are covered by the residuary clause, so far as such residuary clause is itself valid and efficient. (2 Redf. on Wills, 115; *King* v. *Strong*, 9 Paige, 94.) Whatever intention the testator had as to the source from which the legacies were to be paid must be found in the words, "out of funds invested in bond and mortgage," etc. (1 Redf. on Wills, 432 [m. p.].) The testator's intention is to be ascertained from the whole will, and the general scope and scheme of it. (2 Story's Eq. Jur. [12th ed.], § 1074 *b, e;* 1 Redf. on Wills, 428, 433, 434 [m. p.].) The court below should have confined itself to a simple declaration of the rights of the parties, and the principles on which the accounts were to be adjusted. (2 R. S. [Edmonds' ed.], 96, § 61; id., 97, § 65.)

*E. W. Paige*, for Union Theological Seminary, appellant. Section 6 of chapter 319 of Laws of 1848 does not apply to this appellant; it is only applicable to corporations organized under that act. (*Lefevre* v. *Lefevre*, 59 N. Y., 434, 447, 448.) This appellant was not a "religious" society within the meaning of that adjective as ordinarily used in the statutes. (*Theo. Sem. of Auburn* v. *Kellogg*, 16 N. Y., 83, 89.) Chapter 51, Laws of 1870, amending the act of 1848 (chap. 319), as to this appellant repealed the two months clause in section six of the act of 1848. (*Excelsior Pet. Co.* v. *Lacey*, 63 N. Y., 422–426; *Dexter and Limerick Pk. Rd. Co.* v. *Allen*, 16 Barb., 15–18; *Davis* v. *Fairbanks*, 3 How. [U. S.], 636; 6 Wels. & Skin. Laws N. Y., p. 24, chap. 85.) If the act of 1870 has the effect which is claimed for it, it is a "*mort main* act," and must be strictly

construed. (*Downing* v. *Marshall*, 23 N. Y., 366, 379; *Myers* v. *Perigal*, 2 D., M. & G., 600, 619; *Flood's Case*, Hob., 136; *Att. Gen.* v. *Rye*, 2 Vern., 453; *Att. Gen.* v. *Burdett*, id., 755; 3 Chy. Rep., 154.) The act of 1848 being restricted by its terms.to the corporations which are formed thereunder, it is restricted in its operation to them alone, and its provisions affect no corporations but those formed under it, or those which the Legislature by unmistakable words of reference has brought within its scope. (Potter's Dwarris, 219; *Sullen* v. *Badcock*, 6 S. B., 796.)

*M. M. Budlong*, for New York Bible Society, appellant. The act of 1860 repeals the two months clause of section six of the general act of 1848, and applies to corporations like this appellant, the New York Bible Society, formed under the general act. (*Lefevre* v. *Lefevre*, 59 N. Y., 446, 448, 449; *Bartlett* v. *King*, 12 Mass., 537; *Nichols.* v. *Squire*, 5 Pick., 168; *Duviess* v. *Farebairne*, 3 How. [U. S.], 636; *Pierce* v. *Delmater*, 1 Comst., 17; Potter's Dwarris on Stat., 154; 2 N. Y. Sup. Ct. Rep., p. 340.)

*Walter Edwards, jr.*, for New York City Mission and Tract Society and others, appellants. The words quoted from the charter of this defendant, viz. : "subject to any provisions of law in relation to devises and bequests by will," do not refer to, or include, or serve to incorporate into said charter section six of the law of 1848. (3 Edmonds' Statutes, p. 705; *Lefevre* v. *Lefevre*, 59 N. Y., 434.) As the gift of more than one-half of the testator's estate was postponed until after the death of his wife, and there would then be none of the relatives mentioned in the act of 1860 (chap. 360), it was not applicable to this case. (*Chamberlain* v. *Chamberlain*, 43 N. Y., 440; *Harris* v. *Am. Bible Soc.*, 4 Abb. [N. S.], 421.) The court below erred in holding that the legacies which were declared to be void were to be regarded as estate undisposed of, and so paid to the next of kin. (43 N. Y., 427, 447.)

*B. F. Watson*, for respondent. The will having been made within two months of the testator's death the legacies to the appellants were void under section 6 of chapter 319, Laws of 1848. (3 Stat. at Large, 705.) The general laws as to charitable corporations, so far as not inconsistent with the charters of the appellants are to be taken as a part of them, and read as though engrafted into and upon them. (*Lefevre* v. *Lefevre*, 59 N. Y., 434.) If the legacies to the appellants should be held valid, they could only be so held to the extent in the aggregate of one-half the testator's estate. (*Chamberlain* v. *Chamberlain*, 43 N. Y., 424.) To entitle a residuary legatee of personality to the benefit of a lapsed or void bequest, he must be a legatee of the residue generally, and not partially so. Where it is clear from express words that a gift of the residue is confined to the residue of a particular fund or description of property, or to some certain residuum, he will be restricted to what is thus particularly given. (2 Rop. on Leg., 457; 2 Jac. & M., 404; 2 P. Wms., 40; Amb., 577; Turn. & Russ., 260; 1 Hill's Chy., 195; Chy. Ct., 138; *King* v. *Woodhull*, 3 Edw., 79; *Chamberlain* v. *Chamberlain*, 43 N. Y., 424; Redfield on Wills, vol. 2, p. 119; *Skrynesber* v. *Northcote*, 1 Swans., 570.) When a residuum of personal estate is disposed of by a will in two parts, and the first disposition is invalid, the same does not go to the legatee of the other part, but goes to the next of kin. (*Beekman* v. *Bonsor*, 23 N. Y., 298; *Betts* v. *Betts*, Sup. Ct. Special Term ; *Downing* v. *Marshall*, 23 N. Y., 382; *White* v. *Howard*, 46 id., 144.) As to the matter of accounting by executors, the jurisdiction of this court and of the surrogate is entirely concurrent. (Redfield on Surrogates, pp. 355–356.)

Miller, J. Numerous questions arise upon this appeal in regard to the construction of the will of the testator. Most of them are sufficiently considered in the elaborate opinion of the judge at Special Term, and the discussion

here will be confined to such of them as are deemed material for a proper disposition of the case.

The legacy to the directors of the Union Theological Seminary, of the city of New York, of the sum of $10,000, devised by the fifth clause of the will, is claimed to be void on several grounds, and mainly for the reason that it is in conflict with the provisions of section 6 of chapter 319 of the Laws of 1848. There is no force in any of the objections urged, unless it may be in the one last stated, and that will be duly considered. The act in question is entitled, "An act for the incorporation of benevolent, charitable, scientific and missionary societies;" and the first section of the act authorizes the incorporation of these societies, for the purposes named, with the addition of societies for literary, mission or other Sabbath school purposes. The sixth section cited is as follows: "Any corporation formed under this act shall be capable of taking, holding and receiving any property, real or personal, by virtue of any devise or bequest contained in any last will or testament of any person whatsoever, the clear annual income of which devise or bequest shall not exceed the sum of $10,000, provided no person leaving a wife, child or parent shall devise or bequeath to such institution or corporation more than one-fourth of his or her estate after the payment of his or her debts, and such devise or bequest shall be valid to the extent of such one-fourth, and no such devise or bequest shall be valid in any will which shall not have been made and executed at least two months before the death of the testator." The question is whether this section applies to the Union Theological Seminary and controls the devise in question; and to determine this question it is important to consider the act incorporating the seminary and those laws amending said act, as well as other provisions of law relating to the subject.

The act to incorporate the Union Theological Seminary (chap. 99, S. L. of 1839), authorizes the taking and holding by gift, grant and devise, or otherwise, and the purchasing and conveying of property as therein provided. The act to

amend the same (chap. 636, S. L. of 1865, § 1), declares, that it shall be lawful for said seminary, "subject to existing laws to take and hold" property, as provided. And the act to further amend the act of 1839 (chap. 129, Laws of 1870), limits the power to take and hold "by gift, grant or devise or otherwise, subject to all the provisions of law relating to devises and bequests by last will and testament." In the comprehensive words employed in the language quoted, the Legislature no doubt intended to embrace "all the provisions of law" of a general character relating to the subject, which would, we think, include those contained in the act of 1848. This would also include the provisions of the "act relating to wills" (chap. 360 of the Laws of 1860), which prohibits any devise or bequest to any benevolent, charitable, literary, scientific, religious or missionary society, by a person having a husband, wife, child or parent, of more than one-half part of his or her estate, and provides that such devise or bequest shall be valid to the extent of one-half and no more ; and the provisions of the act to amend the act of 1848 (chap. 51 of the Laws of 1870), which, among other things, "authorizes the incorporation of any society for the purpose of establishing and maintaining any educational institution" and confers power upon any university or college incorporated under the act of 1848 and the amendatory act, to take and hold property.

The act of 1860 is not, I think, inconsistent with the two months clause which constitutes a part of section six of the act of 1848, but is in harmony with it and does not repeal the clause in question : (*Le Fevre* v. *Le Fevre*, 59 N. Y., 449.) These are the only general provisions of law relating to the subject, and the inquiry may well be made to what did the act of 1870, amending the defendant's charter refer, unless it was to the law of 1848 and the law of 1860 above cited ? That these provisions are general in their character appears to be conceded by the opinions in *Le Fevre* v. *Le Fevre* (*supra*). In the case cited it was held that the Female Guardian Society was subjected by section six of

the act of 1848 to the operation of the two months clause, and that the bequest was void. It was also held that the provision referred to was not repealed, by express terms or otherwise, by the act of 1860, and that it might be read as if a part of section six, without any want of harmony with the inhibition of making a will within two months before death. It is contended that section six is by its terms confined to corporations organized under that act; that it is not a law relating to wills, and therefore can have no application. The answer to this position is that in the case last cited this court held that a corporation chartered by special act might be made subject, by appropriate language, to the provisions of the general act of 1848 restricting its capacity to take. It is true in the case cited the provision in the charter was "subject to the same provisions as provided in the general laws for the incorporation of religious and benevolent societies;" but this language is not any more comprehensive than that contained in defendant's charter, as we have seen. Looking at the intention of the Legislature, it is to be presumed that the same intention existed in chartering the defendant's corporation as did in reference to the Female Guardian Society, and any inference to the contrary would leave the limitation without any meaning, as by its terms it could not apply to any other laws.

It is further contended that the act of 1848 is not a provision of law relating to wills. The answer to this position is that this is not required by the defendant's charter. The language employed relates to devises and bequests by last will and testament, and hence the bequest is brought directly within the words of the act of 1848. It may be added that as devises and bequests pertain to wills, it is not apparent why the provision in question does not relate to them. The provision of law referred to expressly meets the terms employed in the charter. The argument that the judgment can be upheld only by construing the statute of 1848 and 1860 to mean something which is not expressed, is not, we think, well founded. The designation of the vari-

ous institutions named in the act should receive a liberal interpretation, and not be restrained by any technical rule. It is conceded that the defendant's institution is a " seminary " for the instruction of students in " theology." What is this but a " literary " institution, within the very language of the law. It certainly relates to letters and to literature. It is also " benevolent," for it was incorporated to impart religious instruction, without any purpose of gain. For the same reason it comes within the definition of " charitable," as charitable uses embrace gifts for general public uses, and may include both the rich and the poor : (Bouvier, title Charitable Uses.) Properly speaking, then, the defendant comes palpably within the strict and literal meaning of the terms employed in the act of 1848. We do not deem this material, however, for it is quite sufficient if the defendant is included within the general purposes of the act which relates to devises and bequests by will. And when the Legislature provided in the defendant's charter that the power to take by devise should be controlled by " all provisions of law " relating to that subject, it included the provision cited from the act of 1848, without regard to its title, or any particular institutions therein named, even although such provision was originally intended to be restricted in its operation to corporations formed under that act. There can, we think, be no doubt as to the power of the Legislature to pass a law applying a prior enactment relating to particular institutions therein named, by implication or by reference, as well as by an exact recital of the language employed, to other institutions not named by a subsequent act.

It is also claimed that as the act of 1870, amending the act of 1848 and authorizing the incorporation of any society for the purpose of establishing and maintaining any educational institution, and also provides for the taking and holding, by gift, grant, devise or bequest, of any university or college incorporated under said act, subject to the restrictions contained in the act of 1860, it excludes all other restrictions,

and repeals the two months clause in section six of the act of 1848. If the defendant is a benevolent, literary or charitable institution, then of course the latter act can make no difference. To hold that the defendant came within the provision cited and no other, would entirely exclude the amendment to its charter passed in 1870, which, as we have seen, includes " all provisions of law," while the amendment applies the act of 1848 to a " university or college," which is not the designation by which the defendant was chartered or is generally known. It may also be remarked that the amendment to the defendant's charter was passed subsequent to the amendments of the act of 1848, and hence, as the last enactment would include every provision of law, it is not restricted to the act of 1860. It should also be noticed that it is at least questionable whether the restriction in the act of 1870 is not qualified by the defendant's charter, and should not be regarded as only an additional one besides those already imposed, without in any way impairing the effect of such charter. There is nothing, we think, in the point urged that if the act of 1870, amending the defendant's charter, has the effect claimed, it is a mortmain act. Nor is it essential, we think, that the two months clause, and all the other restrictions contained in section six, should be held to apply to a devise or bequest, in order to enforce such clause. The various acts of the Legislature which have been cited would seem to indicate a general policy of the State in reference to restricting devises and bequests made to corporations of a particular class; but aside from such a consideration, it is sufficient that a fair interpretation of the provisions cited leads to the conclusion that this defendant was not entitled to the bequest made to it by the will of the testator.

There is, we think, no analogy between this defendant's charter and the charter of the Board of Foreign Missions, for the latter restricts the power to take, subject to the provisions of the act of 1860, while the former covers all provisions of the law on the subject. Some other questions are made

in reference to the point considered, but none of them, we think, demand especial attention.

The validity of the bequests to the New York City Mission and Tract Society incorporated by the act chapter 63, Laws of 1866, depends upon restrictions contained in its act of incorporation of a similar character to those incorporated in the charter of the Union Theological Seminary, and the bequest must fail for the reason stated in reference to the latter institution.

No appeal is taken from the decision in reference to the bequests to the Board of Home Missions and the Presbyterian Hospital, and hence no question is presented as to these institutions.

The validity of the bequest to the Trustees of the General Assembly of the Presbyterian Church in the United States of America, for the use of the fund of disabled ministers, depends upon the question whether the laws of the State of Pennsylvania, which declare the manner in which devises or gifts of this kind shall be made, are applicable and control the bequest in question. The eleventh section of the act of 1855, of that State, relating to this subject declares that: "No estate, real or personal, shall hereafter be bequeathed, devised or conveyed to any body politic, or to any person in trust for religious or charitable uses, except the same, be done by deed or will, attested by two credible, and at the same time, disinterested witnesses, *at least one calendar month before the decease of the testator or alienor*, and all dispositions of property contrary hereto, shall be void, and go, to the residuary legatee or devisee, next of kin or heirs, according to law, provided that any dispositions of property within said period, *bona fide*, made for a fair, valuable consideration, shall not be hereby avoided." Section fifteen provides that: "All dispositions of property hereafter made to religious, charitable, literary, or scientific uses, and all incorporations or associations formed for such objects, shall be taken to have been made and formed under, and in subordination to all the duties and requirements of this act, as rules of property and laws for their government."

Two corporations claim that they were intended to be designated by this bequest, who are defendants herein. Both were organized under the laws of Pennsylvania ; and under the provisions cited it is very clear that if the testator had been a resident of the State of Pennsylvania, the bequest made would have been entirely nugatory, for the reason that the will was executed within one month before the decease of the testator, in violation of section eleven above cited. The question then arises whether the fact that the devisee was a non-resident makes any difference, and renders a bequest plainly in violation of the laws referred to, if made in Pennsylvania, valid and effectual.

The evident object of the laws of Pennsylvania, which have been cited, was to prevent devises or gifts for charitable and religious purposes, except in the manner expressly provided. The will or deed must not only be executed in the presence of two witnesses, but at least one calendar month prior to the death of the giver. "The limitation related both to the power to dispose of property and the right to take it by deed, bequest or devise, and it cannot be claimed, upon any valid ground, that the law was intended to be confined in its operation to the mere formal requisites essential to the valid execution of the instrument. " It virtually declares that "no estate" shall pass, and that "all dispositions of property," for the purposes of the act, without regard to the domicile of the giver, shall be ineffectual, unless made in conformity with its provisions. "The policy of the law of Pennsylvania evidently was to make *all* such gifts invalid ; and it would be a forced and constrained construction to hold that such policy could be avoided and set at naught, and the very intent and language of the act frustrated, because the testator resided and the will was executed outside of the territorial limits of that State." Suppose a resident of Pennsylvania should pass over the line, and make a will there in violation of this statute. Will this avoid it and set it at naught? If it would, the law of the State would be entirely subverted and rendered of no avail, and its policy in regard to such devises and bequests evaded.

The question discussed was the subject of consideration in the case of *Chamberlin* v. *Chamberlin*, (43 N. Y., 424); and it was held that the law of the testator's domicile controls as to the formal requisites essential to the validity of the will, the capacity of the testator and the construction of the instrument. It was also decided that where the will was executed lawfully, the validity of the bequests will depend upon the law of the domicile of the legatee and of the government to which the fund by its terms is to be transmitted for administration and the particular purposes indicated by the testator. It was also said by ALLEN, J., after laying down the foregoing rule: "Whatever may be the law of Pennsylvania, a testator domiciled in that State cannot establish, by bequests of personalty to citizens or corporations of this State, a charity or trust to be administered here inconsistent with the policy or the laws of this State. A gift by will of a citizen of this State to a charity, or upon a trust to be administered in a sister State, which would be lawful in this State, the domicile of the donor, would not be sustained if it was not in *accordance with the laws of the State in which the fund was to be administered.* "Bequests in aid of foreign charities, valid and legal in the place of their existence, will be supported by the courts of the State in which the bequests are made: (Hill on Trustees, 457.)" The learned judge also holds that if the legatee is authorized to take the legacy, "it will be sustained, irrespective of the law of the testator's domicile, subject, however, to this qualification, that if the law of the testator's domicile in terms forbid bequests for any particular purpose, or in any other way limit the capacity of the testator in the disposal of his property by will, a gift in contravention of the law of the testator's domicile would be void everywhere."

The case cited differs materially in the facts from the one at bar. The devise was to a Pennsylvania corporation, and the will was executed more than one month before the death of the testator; and hence the act of 1855 already cited had no application. The principles laid down are, however,

applicable to the case now considered, and it seems quite clear that the law of the domicile of the legatee, and of the government of the State of Pennsylvania, must prevail. If the will had been made in Pennsylvania, there would be no question that the law of that State would control. Can there be any less doubt because it was made in New York? Clearly not; for the rule is the same, without regard to the fact that the will was executed out of the State of Pennsylvania. The remarks which we have cited from the opinon expressly uphold this rule, and are directly in point. The position taken by the counsel for some of the defendants, that the case cited would sustain and not defeat the legacy, is not, we think, upheld.

The terms of the bequest in the case cited, which was particularly involved, are not material to the decision of the case at bar, as the whole question here turns upon the effect of the execution of the will within the *thirty* days provided for by the act of 1855. While the legacy in the case cited was properly sustained, it by no means follows that it should be upheld in the case at bar. The question is not as to the construction of the terms of the devise, but as to the right to make it at all, in contravention of the statute of Pennsylvania. To maintain that the statute of Pennsylvania has no force in New York, would render the statute ineffective and of no avail in many cases, in violation of the express prohibition which constitutes its very essence. Although the question considered did not distinctly arise in the case cited, yet the principle involved authorized its consideration, and we think it is decisive on the subject in the case at bar.

It is also insisted that the defendant the "trustees of the general assembly," etc., having been chartered by special act before the passage of the act of 1855, its power to take and hold real and personal estate given by its charter cannot be taken away, restricted or limited by a subsequent act, and its power in this respect is not subject to the act of 1855. A complete answer to this position is that the defendant derived no more right to take and hold property than was

possessed by individuals, which is always subject to the general laws of the State existing or laws to be thereafter passed in regard to the acquisition and disposition of property. It follows that the bequest, being in contravention of the act of 1855, was void in Pennsylvania, where the legatee has a domicile, and consequently void in New York, where the testator resided.

As the conclusion arrived at disposes of the subject, we do not deem it necessary to consider whether the bequest in question would have been invalid under the act of 1848. Nor is it important, under the views which we have taken, to determine which of the two corporations claiming the legacy would have been entitled thereto if it had been valid.

In regard to the bequest to the New York City Bible Society, we concur with the opinion of the General Term, that the statute of 1860 did not affect or restrict the operation of the two months clause contained in section six of the act of 1848: (*Le Fevre* v. *Le Fevre*, 59 N. Y., 434.)

It is claimed that the case last cited does not decide the question and is not a binding authority. It is true that in the case cited the legatee was not incorporated under the general law of 1848, but by a special charter. We think this does not aid the position taken by the counsel for the Bible society ; for if section six was applicable to a society with a special charter, there is far stronger reason for holding that it applies to a corporation organized under the general act. It may be added that the question was fully considered in the case cited; and as the reasoning in the opinion is sound, the *decision* should be followed.

We think that there was no error of the judge upon the trial in the conclusion arrived at, that the sums bequeathed by the void legacies, contained in the fifth, seventh, eighth, ninth, tenth, twelfth and thirteenth articles of the will, and amounting to the sum of $24,000, belong, as estate undisposed of, to the widow and next of kin of the testator, and that the same should be distributed as intestate property. If the legacies referred to are void, then, if no other

provision is made, the disposition must follow the statute of distribution.

It is claimed that the eighteenth article of the will is a residuary clause which declares the disposition to be made of some of these void legacies. By this provision the testator gives and bequeaths "all the principal left of my estate, after the death of my wife, Amelia Kerr, to the societies, seminaries or institutions, named in the fifth, sixth, seventh, ninth and tenth articles or bequests, to be divided according to the several amounts so bequeathed *pro rata*."

It will be seen that this relates to a disposition after the death of the wife of the testator, and not before, and hence the amount of the void legacies in the meantime must remain undisposed of, unless some other provision is made. And even after her death, if these legacies were valid, the bequests would be subject to the act of 1860, and the same would be valid only to the extent of one-half of the estate bequeathed, leaving the other half undisposed of to be distributed among the next of kin of the deceased. This provision only takes effect after the death of the testator's wife, and hence leaves no express direction as to the disposition of any of the legacies which may be declared to be void. It, therefore, can scarcely be regarded as a residuary clause, in the usual acceptation of that term. According to the position assumed by the plaintiffs, the sums so bequeathed by the void legacies would increase the amount of the widow's portion, and would be subject to her life estate in the income thereof, and not be payable until after her death. The fifteenth clause, which provides for the widow, bequeaths "all the net income that may be derived from my estate, after my decease and after the legacies are paid off," during her life. It was evidently intended by the testator to dispose of a portion of his estate to pay legacies, and then that the widow should take the remainder. The estate was by his will divided into two parts. The first was the legacies, and the second the provision for his wife. The amount of the former was fixed and definite, and the testator knew exactly what it would be.

This he meant should be first deducted, and then the balance given to his wife.

The general rule is that in a will of personal property the general residuary clause carries whatever is not otherwise legally disposed of. But this rule does not apply where the bequest is of a *residue of a residue* and the first disposition fails. This was held in *Beekman* v. *Bonsor* (23 N. Y., 298, 312); and it was there laid down, quoting from the master of the rolls in *Skrymsher* v. *Northcote* (1 Swanst., 570): "It seems clear on the authorities that a part of the residue of which the disposition fails will not accrue in augmentation of the remaining parts as a *residue of a residue;* but, instead of *resuming* the nature of residue, devolves as undisposed of." (See also, *Downing* v. *Marshall*, 23 N. Y., 382; *White* v. *Howard*, 46 id., 144.) In the case at bar the widow took the residue after the payment of the legacies. As some of them are void, another residuum remains; and this she was not entitled to within the rule laid down; and as the estate was disposed of in two parts, and the first was invalid, the second does not pass to the legatee, but goes to the next of kin. The general rule referred to, that the residuary bequest carries everything with it, is subject to some qualifications, as we have seen; and it is laid down in *King* v. *Woodhull* (3 Edw. Ch., 79, 82), as follows : "That to entitle a residuary legatee to the benefit of a lapsed or void bequest, he must be a legatee of the residue *generally*, and not *partially so;* for, where it is manifest, from the express words of the will, that a gift of the residue is confined to the *residue* of *a particular fund* or description of property, or to some certain *residuum*, he will be restricted to what is thus particularly given, since a legatee cannot take more than is fairly within the scope of the gift." It is also said in substance that to exclude what would fall by lapse or invalid disposition, as it may be supposed that the testator did not intend to die intestate as to any portion of his property, the law requires that he should use words limiting the gift of residue and showing an inten-

tion to exclude such portions of his estate as may fail to pass.

In the case considered, it is very apparent that the testator's wife was not a residuary legatee of all the fund, but only partially so, as the devise to her was confined to a fund after a certain amount had been deducted; and it appears by the language of the bequest most manifestly that he did not intend to include any portion of these legacies in the provision for his wife. He assumed that they were valid, and in making no provision for the failure of the legacies, as well as in the provision made for his wife, we must assume, we think, that his intention was that in such a contingency they should pass to the next of kin. The language of the two clauses of the will cited plainly indicates that such was his design. The cases are numerous which sustain the doctrine that where the language of the will giving the residue is confined to a particular fund or to a certain residuum, it will be restricted accordingly. In *Ommaney* v. *Butcher* (Turn. & Russ., 260), the testator, after giving a number of legacies, provided that: " In case there is any money remaining, I should wish it to be given in private charity; " and it was held that the general residue of the testator's personal estate, consisting of household estate, etc., was not comprehended in the residuary clause, which was confined to the residue and articles directed to be sold; that private charity was an object too indefinite to give the crown jurisdiction, or to enable the court to execute the trust; that the executors having equal legacies could not take beneficially; and that the next of kin were therefore entitled to the general residue, including what was comprehended in the residuary clause. In *Bland* v. *Lamb* (2 Jac. & W., 404), it was held that a legacy left to the testator by a relative after the making of the will did not pass under a general disposition. Lord Chancellor ELDON said: " There can be no doubt that a gift of the residue may have a limited operation; although the general doctrine of the court is, that if a person gives all the rest of his personal estate or property, such a gift will

not only pass that which he then has, but that which may become his property." In *Att'y-Gen.* v. *Johnstone* (Ambler, 577), the testator, after bequeathing a number of legacies, left it with his executors to dispose of " the small remainder of my personal estate " in " charity schools in Hamburgh." The lapsed legacies amounted to £20,000 ; and it was held that the charity schools had no right as residuary legatees. Lord Chancellor CAMDEN said : " That he was clear the charity schools have no right under the description of residuary legatees. The rule is very true in general, that the residue takes in lapsed legacies." \* \* \* " But the residuary legatee must be a *general* legatee, to take anything that does not pass by the will. If the testator had circumscribed and confined the residue, then the residuary legatee, instead of being a general legatee, becomes a *specific* legatee." \* \*
" I look upon the residuary devise to be specific, contingent and conditional ; that is, ' In case my estate turns out to pay all my other legacies (which it has not) and it should be a little more, then I give that little.' " These cases establish that even in the English courts, which go very far to favor the residuary legatee, and often strain a point to hold that the residuum does pass, to avoid the consequence of its falling to the executor, that it is only where the intention is manifest, that they will sustain a bequest of this description. In *Peay* v. *Barber* (1 Hill Chy. [S. C. R.], 95), a bequest was made by the testator to his wife of one-half of certain personal property and to his sister's children all the rest. The wife died before the testator and the legacy lapsed. It was held that the words " all the rest and residue of my property " must be understood as exclusive of that devised ; that nothing else of the lapsed legacy but property of this description passed under the residuary bequest ; and that the property devised descended to heirs generally. From the cases cited it is entirely clear that in the interpretation of a residuary clause in a will, or one which it is claimed bears any analogy to it, the court will not only look at the language employed, but the surrounding circum-

stances, to determine what the intention of the testator was. The whole theory of the will, and the plain intention of the testator, is in conflict with the doctrine contended for; and the testator having died intestate as to the portions of his estate mentioned in the eighteenth clause of his will, except as to five-twenty-sixths, the widow and next of kin are entitled to the same.

It may also be remarked that in order to make the corporations named general residuary legatees, the residue should have been given to them as a class; for a devise or bequest to several, specifying the proportion of each, is not to be regarded as made to them as a class, but is a gift of a certain portion of the residue to each of them by name. If, for any reason, any one fails, the portion thus failing will not go to increase the other portions of the residuum, as a residue of residue. (2 Redf. on Wills, 119; *Skrymsher* v. *Northcote*, 1 Swanst., 570.)

The other questions raised are fully covered by the opinion of the trial court and do not require examination. Concurring with the views there expressed, as modified by the decision of the General Term, we are unable to discover any ground for reversing the judgment; and the same should be affirmed, with costs in this court of all the parties appearing, to be paid out of the estate.

EARL, J. (dissenting). Differing as to the construction of this will, in some particulars, from the court below, I will confine my examination now to those particulars, leaving the construction of other portions of the will, so far as they are brought to our attention by any appeal, to rest upon the decision of that court.

1. By the fifth clause of the will the testator bequeaths " to the directors of the Union Theological Seminary of the city of New York the sum of $10,000, to be invested as a permanent fund in stocks or bonds of the United States or of the State of New York, the interest of which shall be given as support to such student or students of the said

seminary, studying with a view to the christian ministry, as shall be selected for the gift by the directors." This clause has been held invalid, because the will was not executed at least two months before the death of the testator; and this conclusion was reached by holding that the two months' limitation contained in section 6 of chapter 319 of the Laws of 1848, the testator having left a widow. was applicable to this corporation.

The corporation was organized by special charter by chapter 99 of the Laws of 1839, "an act to incorporate the Union Theological Seminary." By that act the corporation was made "capable in law of taking and holding by gift, grant and devise, or otherwise, and of purchasing and holding and conveying, both in law and equity, any estate, real or personal; provided that the clear annual value or income of their real estate shall not exceed the sum of $15,000, and their personal estate shall not exceed the sum of $50,000, exclusive of such professorships as may be from time to time endowed."

In 1848 the act above referred to, entitled "an act for the incorporation of benevolent and charitable, scientific and missionary societies," was passed. It is a general act, providing for the mode of incorporating societies for "benevolent, charitable, literary, scientific, missionary or mission or other Sabbath school purposes." Section six of the act provides as follows: "Any corporation formed under this act shall be capable of taking, holding or receiving any property, real or personal, by virtue of any devise or bequest contained in any last will or testament of any person whatsoever, the clear annual income of which devise or bequest shall not exceed the sum of $10,000; provided no person leaving a wife or child or parent shall devise or bequeath to such institution or corporation more than one-fourth of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of such one-fourth, and no such devise or bequest shall be valid in any will which shall not have been made and executed at

least two months before the death of the testator." It will be observed that the limitations contained in that section are applicable only to corporations formed under that act.

In 1860 (chap. 360 of the laws of that year) an act entitled "an act relating to wills" was passed. It contains two sections, and is as follows : "Section one.   No person having a husband, wife, child or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts, (and such devise or bequest shall be valid to the extent of one-half, and no more).   Section two.   All laws and parts of law inconsistent with this act are hereby repealed."

The purpose for which the Union Theological Seminary was organized is not particularly or clearly disclosed in the act of incorporation.   But it may be inferred, from the title of the act and a few hints contained in the act, that the purpose was the maintenance of a seminary for the instruction of students in christian theology.   It was therefore both a literary and religious society, within the meaning of the act of 1860.   The limitations contained in that act reached all corporations of the character described, whether formed under the general law of 1848 or under special charters, and whether formed before or after the date of that act.   It did not undertake to deal directly with corporations and place any limitations upon their powers.   It simply placed restraints upon the power of every person having a husband, wife, child or parent, to devise or bequeath property to any of the corporations mentioned.

Prior to the passage of that act, the only limitations upon the power of this corporation to take by bequest were those contained in its charter, and they related solely to the amount of property it could take and hold.   Provided the limited amount was not exceeded, any competent testator could bequeath all his property to it at any time before his death;

and the same was true after the act, except that no person resident in this State and subject to its laws, who was related as mentioned in the act, could bequeath to it more than one-half of his estate.

Thus the law remained as to this corporation until 1865, when its charter was again before the Legislature, and was amended by chapter 636 of the laws of that year as follows: "It shall be lawful for the Union Theological Seminary in the city of New York, subject to existing laws, to take and hold by gift, grant or devise, or otherwise, and to purchase, hold and convey any estate, real or personal; provided that the clear annual value or income of their real estate shall not exceed the sum of $15,000, and their personal estate shall not exceed the sum of $100,000, exclusive," etc. Although the two months limitation contained in section 6 of the act of 1848 had been in force for many years, the Legislature did not subject this corporation to such limitation by this amendment of its charter.

In 1870, by chapter 129 of the laws of that year, the charter of this corporation was again amended, as follows: "It shall be lawful for the Union Theological Seminary, in the city of New York, to take and hold by gift, grant or devise, or otherwise, subject to all the provisions of law relating to devises and bequests by last will and testament, and to purchase, hold and convey any estate, real or personal, for the purposes of their said incorporation; provided that their personal estate shall not exceed the sum of $200,000, exclusive," etc.

The claim is that by the language used in this last act, to wit, "subject to all the provisions of law relating to devises and bequests," this corporation became subject to the two months limitation contained in section 6 referred to. Did the Legislature, after that section had been in force for twenty-two years, and after the charter of this corporation had once in the meantime been amended, intend, by such uncertain, general language, to subject this corporation, for the first time, to the limitation then provided exclusively for

corporations formed under that act ?   I think not.   If such had been the intention, it is highly probable that different language would have been used to express it.   The language used by a fair and natural interpretation, does not refer to the act of 1848.   That was an act for the formation of certain kinds of corporations.   It was not an act relating, in any proper sense, "to devises and bequests by last will and testament."   It contains no general provisions.   It relates only to the corporations formed under it.   By the language, "the provisions of law relating to devises and bequests," was not meant such provisions found in an act confined exclusively to corporations formed under it, or such provisions on the subject of devises and bequests as could be found in many of the special charters created by the Legislature ; but the language has reference to the general provisions to be found in the statutes regulating devises and bequests.   Such provisions are found in the act of 1860, which was enacted solely for the regulation of devises and bequests to corporations like this.   And the construction given by the court below to this language gets no support by reference to the general policy of the law and the general course of legislation.   It is true that in 1848 it was the policy of the Legislature to require certain wills, which were to confer benefits upon benevolent and other corporations formed under the general act, to be executed at least two months before the death of the testator.   But that limitation was not made applicable to the numerous similar corporations then existing under special charters ; and although between 1848 and 1870 nearly one hundred and fifty acts were passed incorporating or extending and enlarging the corporate powers of as many corporations similar to those named in the act of 1848, the two months limitation was imposed upon but few of such corporations.   Some of such corporations were made in terms subject to the act of 1848 ; some in terms subject to the act of 1860; some were restricted by the insertion in their charters of the two months clause ; some were made subject to the general laws of the State ;

and some were made subject " to all provisions of law relat-
ing to devises and bequests by last will and testament."
But the majority were incorporated with no restriction what-
ever as to their power to take and hold property, except as
to the amount.   In 1870 there were, besides the act amend-
ing the charter of this corporation, seventeen of such acts.
In nine the corporations were made subject " to all provis-
ions of law relating to devises and bequests by last will and
testament ; " in one the corporation was made subject to the
general laws of the State ; and in seven there were no
restrictions whatever, except as to the amount of property
they could take and hold.

    It may be said that the language of the act of 1870,
which we are endeavoring to construe, can have no force or
effect unless it be referred to the act of 1848, as the act of
1860, and other general provisions of law as to devises and
bequests, would apply to this corporation, without the use
of this or other language in its charter, or any amendment
thereof.   This is true, but I think it has no significance.
Acts are not always drafted by men learned in the law, and
language is frequently used, ignorantly or from abundant
caution, which is wholly unnecessary.   In the law of 1865,
above set out, it will be seen that the words " subject to
existing laws " are used in the same way, without any mean-
ing, as the corporation would have been subject to such laws
without the use of that language.   So in many of the
special acts the corporations are in the same useless manner
made subject to the general laws of the State, or to certain
provisions of the Revised Statutes, which would apply if
not referred to or mentioned.   In the language now under
consideration, the words " last will and testament " add
nothing to the meaning, as there could be no devise or
bequest without a will.   It is probable, therefore, that the
draughtsman of the act of 1870 did not at the time know or
realize that the act of 1860 would apply to this corporation,
without the reference he made in this language, and that he
used the language for the purpose of applying that, and any

other general provisions as to devises and bequests, to this corporation. Hence the language was not used without a purpose, although used unnecessarily.

I think, therefore, that it is reasonably clear that the two months' limitation contained in section six of the act of 1848 does not apply in the case of a bequest to this corporation. If the construction were doubtful, the doubt should be so solved as to uphold this bequest. The general right which this testator had, at any time before his death, to dispose of his property by will in any manner he wished, should not be taken away by language of doubtful and uncertain import and bearing. This bequest should be upheld, if it can be, without the violation of law, and effect thus given to the will of the testator, and that it can be, I think I have sufficiently shown.

2. The ninth clause of the will was also held to be invalid by the court below, for the same reason, and it is as follows: "I give and bequeath unto the New York City Mission and Tract Society the sum of $1,000." This society was created by the act chapter 63 of the Laws of 1866. By the first section of the act, certain persons named were constituted a body corporate, and it was provided that the corporation "shall have the powers which, by the third title of the eighteenth chapter of the first part of the Revised Statutes, are declared to belong to corporations, and shall be capable of taking, by purchase or devise, holding and conveying any estate, real or personal, for the uses and purposes of said corporation, subject to any provisions of law in relation to devises and bequests by wills," the real estate not to exceed the yearly value of $50,000.

The language, "subject to any provisions of law," etc., is claimed to subject this corporation to the two months' limitation contained in section six of the act of 1848. This language is the same as that contained in the act of 1870, which has just been considered, except that there the word "all" was used instead of "any." This slight difference in the language can make no difference in the construction.

The word "any," as used, has no broader signification than the word "all" If the words "any provisions," etc., are to be construed so literally, and held to be so far reaching as to refer to the limitations contained in the section six, which were made applicable solely to corporations formed under the act of 1848, then they must also be held to refer to any provisions of law as to devises and bequests found in any of the numerous special charters granted to corporations since the foundation of our State government, because such provisions would literally be included in the words "any provisions." It will be seen, by an examination of the statutes, that whenever the Legislature, since 1848, has undertaken to subject corporations created by it to the two months' limitation, it has done so by express terms, or by express reference in plain language to the act of 1848.

If it be said that this language has no effect unless it refers to the act of 1848, it may be said, with equal truth, that the language used in this act as to the Revised Statutes has no effect: (*Bowen* v. *Lease*, 5 Hill, 221.) All this language is superfluous, and yet was doubtless used for a purpose. Therefore, without more, for all the reasons above stated, this bequest, should also be held valid.

3. The tenth clause of the will is as follows: "I give and bequeath unto the Trustees of the General Assembly of the Presbyterian Church of the United States of America, for the use of the fund of disabled ministers, the sum of $5,000." There is a corporation organized under an act of the Legislature of Pennsylvania, passed in 1799, called "The Trustees of the General Assembly of the Presbyterian Church in the United States of America," as named in the act. The corporation is authorized to take property by devise and bequest, and I have no doubt that the purpose for which this bequest was made is one for which it is authorized to take and hold property under its charter. There is also in the same state another corporation, named "The Presbyterian Board of Relief for Disabled Ministers and the Widows and Orphans of Deceased Ministers," organized in 1876, less than two

months before the date of this will, under a general law of that State. And the purpose of that corporation is "to receive, hold and disburse such real and personal estate as may be given to it for the relief and support of disabled ministers and the needy widows and orphans of deceased ministers of the said church." There is nothing in the charters of these corporations which prevents either of them from taking, holding and administering this legacy. The court at Special Term held that this legacy was intended to be given to one or the other of these corporations, but held that it was immaterial to determine which, because, in any event the bequest was invalid. I think that the court should have determined that the legacy was intended for the corporation first named, as the name of that corresponds accurately with the name contained in the will, and there is no evidence that any other corporation was intended. It is necessary only, therefore, to determine whether that corporation can take this legacy. I think it can.

There is no claim that the two months' limitation contained in the act of 1848 applies to this Pennsylvania corporation; but the claim is that the limitation of one month contained in section eleven of an act of the Pennsylvania Legislature, entitled "An act relating to Corporations and to Estates held for Corporate, Religious and Charitable Uses," passed in 1855, applies; and so it was held by the court below. That section is as follows: "No estate, real or personal, shall hereafter be bequeathed, devised, or conveyed to any body politic, or to any person in trust for religious or charitable uses, except the same be done by deed or will, (attested by two credible, and at the time disinterested witnesses,) at least one calendar month before the decease of the testator or alienor; and all dispositions of property contrary hereto shall be void and go to the residuary legatee or devisee, next of kin or heirs, according to law." That is a general law controlling all wills and deeds of property to corporations in that State. It does not interfere with or regulate the capacity of corporations to take, and such was not its design. It has

no extra territorial force. It was intended solely to regulate the conduct of persons within that State. It prescribes the mode by which property may be given to corporations or in trust for religious or charitable uses in that State. Property may thus be given by will or deed; the instrument must be attested by two witnesses; the witnesses must be disinterested; and the instrument must be executed at least one month before the decease of the maker thereof. None of these provisions have any relation whatever to an instrument executed here by a person domiciled within this State. This will was executed here by a competent testator, in the mode prescribed by the laws of this State, and hence it is a valid will. It gives a bequest to this corporation which is authorized to take it, and hence the bequest is valid. The case of *Chamberlain* v. *Chamberlain* (43 N. Y., 424), is abundant authority for this conclusion. In that case, it was decided that the law of the testator's domicile controls as to the formal requisites essential to the validity of a will, the capacity of the testator, and the construction of the instrument; that when by the *lex domicilii* a will has all the formal requisites to pass title to personalty, the validity of particular bequests will depend upon the law of the domicile of the legatee, except in cases where the law of the domicile of the testator in terms forbids bequests for any particular purpose, or in any particular manner, in which latter case the bequest would be void everywhere; that the existence of corporations under the laws of sister States is recognized by the courts of this State, and they may take personal property under wills executed by citizens of this State, if by the laws of their creation they have authority to acquire property by bequest. According to these principles, the inquiry in all such cases must be first, is the bequest valid under the laws of this State, upon the assumption that the legatee can legally take the legacy; and second, is the legatee authorized to take it under the laws of the State where it is located? If these two questions can be answered in the affirmative, the bequest must be upheld.

This bequest must therefore be held valid.

The court below held that all the sums mentioned in bequests in this will, which were held to be invalid passed as property undisposed of to the widow and next of kin of the testator ; and in this, I think, there was error.

After providing for all the legacies which he desired to give to other parties, the testator made the following provision for his wife in the fifteenth clause : " I give and bequeath unto my beloved wife, Amelia Kerr, all the net income that may be derived from my estate after my decease, and after the legacies are paid off she is to receive the same during her life-time. " He had before provided that his debts should be paid. He then gave the legacies, and here provides in effect that what is left of his estate after the payment of his debts, legacies and the expenses of administration, shall constitute a fund the net income of which his wife shall receive during her life. And then in the last clause of the will he provides as follows: " I give and bequeath all the principal left of my estate, after the death of my wife, Amelia Kerr, to the societies, seminary, or institutions named in the fifth, sixth, seventh, ninth and tenth articles, or bequests to be divided according to the several amounts so bequeathed *pro rata.*" This is a disposition of the precise sum of which his wife during her life is to have the income. These two clauses make a full and plain disposition of the residue of the estate, after payment of debts, expenses and legacies, the income thereof to go to the wife during life, and after her death the *corpus* or principal to go to the residuary legatees named in the last clause. A residuary bequest is one which, if valid, carries all the personal property not otherwise disposed of ; and these bequests are of that character.

Hence this is a case where the whole of the residuary estate is fully and perfectly disposed of. In such a case it is well settled that a residuary disposition as to personal estate carries not only everything not attempted to be disposed of, but everything which turns out not to have been effectually disposed of, as void and lapsed legacies. As said by a learned

judge, " everything which is ill-given falls into the residue :" (*Reynolds* v. *Kortright*, 18 Beav., 417.) A presumption arises in favor of the residuary legatee against every other person except the particular legatee ; and the testator is supposed to give a legacy away from the residuary legatee only for the sake of the particular legatee. Courts are always inclined against adopting any construction of wills which would result in partial intestacy, unless absolutely forced upon them. And in order to prevent a void legacy from falling into the residue, there must be some plain indication in the language of the will that the testator so intended. As said by the vice chancellor in *King* v. *Woodhull* (3 Edw. Ch., 79): " To exclude what may fall, by lapse or invalid disposition, from the gift of the residue, as it may be supposed that the testator did not intend to die intestate as to any portion of his property, when he set about making a will, and is supposed to exclude the residuary legatee only for the sake of the particular legatee, the law requires that he should use very special words, clearly limiting the gift of the residue, and showing in express terms an intention to exclude such portions of his estate as may fail to pass under previous clauses of the will, in order to take it out of the general rule above stated. " (See also 2 Redf. on Wills, 442; Wigram on Wills [O'Hara's ed.], 73; *Attorney General* v. *Johnstone*, Amb., 577; *Ring* v. *Strong*, 9 Paige, 94; *Banks* v. *Phelan*, 4 Barb., 80.) Here there is no language which within any authority will exclude the void legacies from the residue and cause an intestacy as to them, and they should therefore be held to fall into the residue.

It therefore follows that the whole of the residue, after the payment of the debts and valid legacies and the expenses of administration, should constitute a fund, the net income of which must be paid to the widow during her life. After her death, the shares of the residuary legatees not competent to take should pass as not disposed of by the will, and the balance of the residuary estate be divided among the other residuary legatees, as directed by the final clause of the will,

subject to the law of 1860 as to the amount which can go to these corporations.

The judgment should therefore be modified in conformity with these views.

All concur with MILLER, J., except RAPALLO and EARL, JJ., dissenting; ANDREWS, J., absent.

Judgment affirmed.