## No. 2392.

### B. R. GRIMES ET AL. v. R. R. SMITH.

1. DEVISEE—WILL.—A will, after providing for the sale of all the testator's Texas property, required the money to be paid over to the executors thereof in another State, who, after discharging some special legacies, were directed "to pay over the balance" of the estate to a legatee who, over forty years after the probate of the will and more than thirty years after the last act of administration in Texas, brought suit for land which had never been disposed of in the administration of the estate; *held:*

(1) That the great lapse of time was sufficient to compel the presumption that the specific legacies had been satisfied and that administration had closed.

(2) The plaintiff having exhibited title in the testator to the land sued for, was entitled to recover.

2. LOCATOR—EQUITY.—The equities of the locator of a land certificate, who locates without contract with the owner, do not extend to fixing a right in the land secured by the location, or even to a lien upon it for his compensation.

APPEAL from Matagorda. Tried below before P. E. Peareson, Esq., Special Judge.

*Mott & Ballinger,* for appellants: The court erred in giving judgment for plaintiff for the land sued for, in this, that in an action of trespass to try title, the plaintiff must recover on the strength of his own established or proven title, and not upon a

title presumed, in whole or in part, by reason of lapsed legacies, payments, lapse of time, or presumed closing of estate, citing Hughes v. Lane, 6 Texas, 289.

The records of the probate courts of Norwalk, Connecticut, and of Matagorda, Texas, being accessible to plaintiff, and he having made no effort to show, by authenticated copies therefrom, that the estates were closed and legacies paid or lapsed, presumptions will not be indulged to establish the necessary facts of his case which were in his power to prove. (Starkie on Ev., mar. p. 67.)

The will having directed all property, both real and personal, to be sold and the proceeds placed in the hands of the Connecticut executors for investment, with directions to pay the interest to testator's mother during her life, and then divide the remainder, after paying special legacies, between plaintiff and Annie Smith, gave plaintiff no title in his own right to Texas lands. (Acklin v. Paschal, 48 Texas, 147, 173.)

1. The plaintiff not being an innocent purchaser, but simply claiming under the will, was bound to do equity.

2. All equities of defendants in the land sued for can be established under the plea of "not guilty."

3. Equitable title in defendants can be established under the plea of "not guilty." (Dalbey v. Booth, 16 Texas, 563; King v. Elson, 30 Texas, 246; Ragsdale v. Gholke, 36 Texas, 286; Wright v. Doherty, 50 Texas, 34; McKamey v. Thorp, 61 Texas, 648; Adams & Wickes v. House, 61 Texas, 639; Smock v. Tandy, 28 Texas, 130; Johnson v. Newman, 43 Texas, 640; 2 Pas. Dig., 1121; McKin v. Williams, 48 Texas, 89; Smith v. Crosby, 47 Texas, 121; Bell v. Warren, 39 Texas, 106; Ross v. Armstrong, 25 Texas Supp., 366; 18 Texas, 706.)

No briefs for appellee on file.

WALKER, ASSOCIATE JUSTICE. Appellee, as plaintiff in the court below, brought suit on October 8, 1884, in the ordinary form of trespass to try title, against B. R. Grimes, John Moore, D. E. E. Braman and Y. J. Poole, to recover possession of an undivided half of one-third of a league in Matagorda county, patented to Rufus R. Smith, assignee of John H. Updike, on February 23, 1875; and on December 11, 1885, filed amended original petition describing the land more accurately, but making no other change in the suit. Appel-

lants, defendants below, presented the following issues by
their answers: 1. General demurrer. 2. Plea of not guilty.
The judge of the district being related to one of the defendants,
recused himself and P. E. Peareson was selected and qualified
as special judge to try the case. A jury was waived and the
cause submitted to the court, who rendered judgment in favor
of the plaintiff, and filed conclusions of fact and law. Trial
was June 8, 1887. Defendants filed appeal bond, assigned
errors, and brought the case into this court by appeal. The
findings of facts by the judge are as follows: 1. "The will
of Smith, probated in 1838, in Matagorda, Texas, directs his
executors in Texas to sell all his Texas property and pay the
money to his executors in Connecticut; the latter were directed
to sell all his property in the United States, and to invest the
proceeds along with the money received from the Texas execu-
tors in bonds and mortgages, secured by real estate in New
York; the Connecticut executors were directed to pay over the
interest arising from such securities to the testator's mother
during her life, and then to pay several small special legacies,
and after the payment of these special legacies, to pay over the
balance of the estate, one-half to each, the plaintiff and Annie
Smith." (Plaintiff's testimony was, that he never received any-
thing from the estate in Texas.) 2. The will was probated in
Matagorda county in November, 1838, the executors in Texas
qualified, and upon the inventory appears a certificate for one-
third of a league issued to John H. Updike. The administra-
tion in Texas continued for fifteen years or more, most of the
property being sold, and the money remitted to Stephen Smith,
who receipted therefor as executor of the testator in Norwalk,
Connecticut. It does not appear that said certificate of one-
third of a league was sold by the Texas executors. 3. In 1875,
a patent was issued on a duplicate of said certificate to Rufus
R. Smith, assignee of John H. Updike, it having been located
in Matagorda county. From these matters of fact the further
conclusions of fact are presumed, to wit: First, that the original
certificate was lost and was never sold by the executors of
Rufus R. Smith in Texas, and second, that considering the
great lapse of time, the special legacies had been satisfied, and
third, that the administration in Texas had been virtually
closed and the estate left vacant."

These findings are not excepted to, though in argument ap-
pellants challenge their correctness to some extent.

The plaintiff's case was made out by the facts of (1) owner-ship by the testator of the Updike third league certificate under which the land was patented, (2) of the will devising "the bal-ance of his estate" one-half to plaintiff; (3) his identity with the person of same name in the will as such devisee, being shown. The words of the will, the "balance of my estate," are exhaustive, passing real and personal property. It was contem-plated by the testator that his executors in Texas would promptly convert all his estate in Texas into money. That they failed to do so could not defeat the clearly expressed intent as to the disposition of the residue of the estate after satisfy-ing the specific legacies.

The trial was had near forty-nine years after the probate of the will, and the last act appearing in evidence in the adminis-tration of the testator's estate was in November, 1853. These periods are long enough to compel the presumption that the specific legacies had been satisfied and that administration had closed. (1 Greenl. Ev., sec. 39.)

The case of Aklin v. Paschal, 48 Texas, 147, in no way con-troverts the right of a devisee under these facts from assert-ing his rights in suit. In the case cited the holder of a money legacy was refused the privilege of intervening in a suit by the heirs of the testator to recover property lapsed by the ex-tinction of the corporation taking under the will. The mat-ters of defense may be treated together and their legal effect examined.

The defendant offered a certificate from one George A. Dav-enport, purporting to be judge of the court of probate of dis-trict of Norwalk, Connecticut, giving a copy from his record of the admission to probate of the will June 24, 1842, and further certifying that at the time of giving the certificate no other had been appointed to the administration, and that Stephen Smith had qualified and bonded as executor. The certificate is dated August 4, 1853. As offered it was not an examined copy produced by a witness (1 Green. on Ev., sec. 508), nor was it certified as required for authenticating records and ju-dicial proceedings under the acts of Congress. (U. S. Rev. Stats., secs. 905, 906.) In connection was offered a receipt dated at New York, September 1, 1853, by Stephen Smith, exec-utor, etc., for four hundred and fifty-six dollars and ninety-one cents, from S. B. Brigham, the executor acting in the Mata-gorda county court, together with an acccunt current of said

Brigham, showing items of debits and credits, and among the latter the items paid to Stephen Smith, executor, etc. These were excluded by the trial judge, save only as a voucher for the payment of the money. It can not be contended that these documents were legal evidence of the pendency of the administration at Norwalk.

The defendants then offered D. E. E. Braman, one of the defendants, to prove that he, under contract with Stephen Smith for an interest of one-half, had obtained duplicate certificates for two one-third league certificates owned by the estate, one of which was the Updike certificate; and, at his own expense and personal labor, had them located and obtained patents; and, in further execution of said contract, that he and Smith had made partition, by which Braman took the Updike survey (in controversy), and Smith, executor, the other; producing Smith's deed for the tract in suit, signed by him as executor, and as one of the heirs of the testator.

This testimony was all excluded, the certificate of the Connecticut probate judge as incompetent, and the contracts for location, etc., for want of authority in Smith to make the contract. The contract for locative interest depended upon whether the locator dealt with the owner or under his authority. It was not in evidence that Smith was the qualified executor, but had it been proved, a like want of authority to sell was in the will limiting his powers and placing the power and duty to sell in the Texas executors. Of this want of authority Braman, taking under an executor, was charged with notice from the terms of the will. Braman then stands in the attitude of a mere locator without a contract affecting the ownership of the certificate.

It is not an open question that the equities of the locator of a land certificate without contract with the owner do not extend to fixing a right in the land secured by the location, or even to a lien upon it for his compensation. In Sypert v. McGowan, 28 Texas, 641, the rule of decision is stated by Smyth, Justice. "It has been settled by this court that the locator could acquire no interest in the land simply by having located the certificate and having it surveyed. The custom of the country to give what is called a locative interest in the land to the person who located it, as compensation for his services, can not create or furnish the terms of a contract to bind the owner of the certificate."

The owner would be liable to the locator to pay the reasonable value of the services rendered, and to pay the money expended, with interest. These equities, however great, do not affect the question of title to the land, and would not defeat the owner in an action for the land against the locator. The testimony of the defendants was properly excluded. The plaintiff having exhibited title to the half interest in the land' sued for, which would not have been defeated even had the testimony offered by the defendants been admitted, the defendants have suffered no damage by its exclusion.

It is noticed that in the judgment there is an order for partition. It is probable that all the parties interested are not before the court.

There being no error in the judgment it is affirmed.

*Affirmed.*