FRANCIS B. DELEHANTY, AS ADMINISTRATOR, ETC., RESPONDENT, v. ST. VINCENT'S ORPHAN ASYLUM SOCIETY, APPELLANT, IMPLEADED WITH MARY CUNNINGHAM AND OTHERS.

*Will — residuary clause — when it includes the remainder in a trust fund created by the will — presumption against partial intestacy.*

A testator, by his will, provided as follows: "First. After all my lawful debts are paid and discharged I give and bequeath to my beloved wife, Mary Cunningham, if accepted by her within two months after my decease, in lieu of and in discharge of her dower in my estate, both real and personal, the sum of $6,000, to be invested in some safe securities in the State of New York by my executor hereinafter named, the interest to be paid to her semi-annually for her support and maintenance so long as she remains my widow."

The testator then gave certain sums of money to certain institutions named in his will, and "the surplus, if any, to be distributed by my executor to the above-named persons and institutions in such proportion as in his judgment he may see fit to do."

*Held,* that the $6,000, directed to be invested by the first item of the will, constituted a portion of the surplus to be divided as above stated.

The court will assume an intention on the part of a testator to avoid partial intestacy unless the contrary intention actually appears in the will itself.

APPEAL by the defendant, St. Vincent's Orphan Asylum Society of the city of Albany, from a judgment, entered in the office of the clerk of the county of Albany on the 19th day of July, 1889, after a trial before the court at a Special Term held in the city of Albany, where it was adjudged, among other things: Fifth, that the remainder in the said fund of $6,000, after the life of the defendant Mary Cunningham, is not disposed of by, or subject to the power granted, the executor of the said will to distribute the "surplus;" that the said remainder was not distributed, nor were any rights thereto created by the said executor, and that the said remainder passed to the next of kin of the testator.

The action was brought to obtain a construction of the will of Daniel Cunningham, deceased, who died January 1, 1873, leaving his widow, Mary Cunningham, but no children or descendants, parent, brother, sister, nephew or niece him surviving. The will was executed in November preceding his death, and provides :

"*First.* After all my lawful debts are paid and discharged, I give and bequeath to my beloved wife, Mary Cunningham, if accepted by her within two months after my decease, in lieu of and discharge of her dower in my estate, both real and personal, the sum of six thousand dollars, to be invested in some safe securities in the State of New York, by my executor hereinafter named, the interest to be paid to her semi-annually for her support and maintenance so long as she remains my widow.

" I give and bequeath to the following institutions the following sums of money, to be paid to each of them by my executor hereinafter named, within eighteen months after my decease :

" To St. Vincent's Orphan Asylum of the City of Albany, ' Female,' fifteen hundred dollars.   To St. Vincent's Male Catholic Orphan Asylum of Albany, one thousand dollars.   To the Catholic Institute of the City of Albany, known as the Little Sisters of the Poor, one thousand dollars.   To St. Vincent's de Paul Society, attached to St. Joseph's Catholic Church of Albany, five hundred dollars.   To Ann Limbach, my deceased wife's daughter, five hun dred dollars.   The surplus, if any, to be distributed by my executor to the above-named persons and institutions in such proportion as in his judgment he may see fit to do.   I direct my executor and hereby authorize him to convert my real estate into money and convey the same to the purchasers, and dispose of the avails thereof in the manner aforesaid.   I likewise make, constitute and appoint John McElroy to be executor of this my last will and testament, hereby revoking all former wills by me made."

The executor qualified and acted until his death, May 24, 1887, and the plaintiff was thereafter appointed administrator with the will annexed.   The testator left an estate consisting of a house and lot on First street, in the city of Albany, and premises known as the " Soap Factory," and some personal property, altogether of the value of upwards of $12,000.   The widow accepted the provision made in the will.   The executor sold the soap factory premises and

paid the money legacies to the several legatees, amounting to $4,500. He conveyed to the widow for life the house and lot on First street, and she accepted such conveyance as a satisfactory investment of $3,000, part of the provision for her benefit as provided in the will, and the executor set aside $3,000 more in bond and mortgages to complete such investment. The executor wasted some of the surplus, and there has only come to the hands of the plaintiff the $3,000 aforesaid, which, with the house and lot on First street, not worth $3,000, constitute the property, subject to the widow's life estate therein affected by this action.

The executor, in order to distribute the surplus mentioned in the will, and in execution of the power given him therein, did, twelve years after the testator's death, by an instrument under seal, declare that he did thereby distribute and give to the persons and institutions named in said will, the sum of one dollar to each of them, other than the defendant, and to the defendant the rest and residue of said surplus, real and personal.

The Special Term held that the $6,000, constituting the principal to produce the income for the widow during her widowhood, formed no part of the surplus to be distributed by the executor, and hence the instrument executed by him to effect distribution of the surplus did not operate upon or include that sum, and that the testator died intestate as to the remainder in that sum. The St. Vincent's Orphan Asylum appealed.

*John T. McDonough*, for the appellant.

*Tracy & Cooper*, for the respondent.

LANDON, J.:

The question is not free from doubt, but we have reached the conclusion that the remainder in the sum of $6,000, forming the principal of which the testator's widow was given the income during her widowhood, is embraced in the surplus, to be distributed by the executor.

It appears quite satisfactorily that the testator intended to make a disposition of his entire estate ; that he intended that the persons and institutions to which he gave particular sums and benefits should

have his entire estate, and that no others should have any part of it. He specified with exactness, no doubt as fully as he could foresee the result, and had confidence that his estate could fully respond, the sums which should be the source or measure of his bequests. He thus bequeathed $4,500 absolutely and $6,000 during the life of his widow, provided she did not remarry. He thought it possible that she might remarry, and, also, that his estate would exceed the sums thus disposed of. The provision for his wife was conditional upon her acceptance of it " in lieu of and discharge of her dower," and he did not know how she would elect. He realized that some further provision should be made in order to make a complete disposition of his estate; he had no near kindred; he had fixed upon the persons and institutions named in his will as the sole objects of his bounty; he could not foresee the action, or faithfulness of his widow to his memory, or her ultimate needs, or how much his real estate, which by his will he equitably converted into money and disposed of as such, would realize; he had confidence in his executor, and he therefore declared " the surplus, if any, to be distributed by my executor to the above-named persons and institutions in such proportion as in his judgment he may see fit to do." He thus designated the persons and institutions who should receive this surplus, and left it to his executor to fix the proportion which each one should take. The will directs the executor " to convert my real estate into money and convey the same to purchasers and *dispose* of the avails thereof in the manner aforesaid." The testator's intention to avoid partial intestacy is thus strongly implied. The courts will presume such an intention, unless the contrary intention actually appears in the will itself. (*Vernon* v. *Vernon*, 53 N. Y., 351; *Floyd* v. *Carow*, 88 id., 560; *Riker* v. *Cornwell*, 113 id., 115; *Kerr* v. *Dougherty*, 79 id., 360; *Thomas* v. *Snyder*, 43 Hun, 14; *Lyman* v. *Lyman*, 22 id., 26.)

No particular form of words is required to pass a residuum. Thus the words " balance of estate " (*Roman Catholic Church* v. *Wachter*, 42 Barb., 43); " balance of my capital " (*Vernon* v. *Vernon*, *supra*); " what is left, my books and furniture, and all other things " (*Goods of Cadge*, Law Rep., 1 Pro. and Divorce, 543); " the balance of my estate " (*Grimes* v. *Smith*, 70 Tex., 217; 8 S. W. Rep., 33), are apt words for the purpose.

Suppose the widow had elected to take her dower and not the semi-annual provision, the surplus then would have been different, but the testator in such case intended it should go to his legatees, including his widow, and he left it to his executor to fix the proportions among them as in his judgment he should see fit; and in either case, in the light of the event, the residuum may go within the provisions of the will, and this affords a strong argument that it does go. But the respondent's contention is that the word *surplus* is so used in this will as not to include, but to exclude, the remainder in the $6,000. The argument is, that the testator first gives the $6,000 as the principal for the annuity to his widow, then $4,500 in the aggregate to the other legatees, and then disposes of the surplus "if any;" these words, meaning if any over and above the sums already mentioned, and not including any of them. This construction is supposed to be strengthened by the fact that the will directs the sums composing the $4,500 to be paid within eighteen months after the decease of the testator, thus implying, in connection with the direction respecting the surplus, that, if there be any surplus, it will then be ascertained and distributable; that if the testator had intended to include the $6,000 in the surplus, he could not expect that it would be distributable at the end of eighteen months, and he would not have suggested the doubt respecting a surplus which the words *if any* imply; that the doubt in his mind was whether there would be any surplus over $10,500; that the $6,000 fund was to come into the executor's hands for investment, and not for distribution. Admitting that this reasoning is entitled to respectful consideration, we still think it must yield to the consideration first adduced. The testator's intention, which must control, we think, was to designate unmistakably the beneficiaries of all his estate, to apportion among them, within safe limits, the larger part of it, and to confide to his executor the apportionment among them of the surplus or residuum.

It follows that the judgment of the Special Term must be reversed. As the widow does not appear to have been served with the summons nor to have appeared in the action, we do not think any part of the investment or estate by which her annuity is to be produced should be disturbed by this judgment. The costs of the parties to

be paid out of the surplus, if any, over and above the amount by which her annuity is secured.

LEARNED, P. J., and FISH, J., concurred.

Judgment reversed and will construed as in opinion ; judgment, with costs accordingly, to be settled by LANDON, J.