

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Overruled by court judgment
Sam F. Patten v. Concho Co.
District Court, Concho Co.
No. 9581

Honorable J. W. Summers
County Attorney
Cherokee County
Rusk, Texas

Dear Sir:

Opinion No. O-3401
Re: Were the two motor graders
purchased in compliance with
the laws of the State of Texas
under the facts stated, and
related questions?

Your recent request for an opinion of this Department on the questions as are herein stated has been received.

We quote from your letter as follows:

"Detailed below is a set of facts, upon which you will please advise me your legal opinion as hereinafter requested.

"The County Auditor of Cherokee County, upon order of the Commissioners' Court legally and regularly advertised for bids for the purchase of certain road machinery for commissioners precincts numbered 1, 2 and 4; this advertisement stated that the Commissioners' Court would meet on January 28, 1941, for the opening of bids and the letting of contracts thereon. Said bids were opened on January 28, 1941, and at that time the Commissioners' Court purchased a motor grader for Commissioners' Precinct No. 1 and issued $4,500.00 in time warrants in part payment therefor. No purchases were made on January 28, 1941 for Commissioners' Precincts Nos. 2 and 4, because the commissioners of those precincts stated to the court at that time that they did not desire to make any purchases at that letting. Immediately thereafter, and on the same day, all unsuccessful bidders, including the Hi-Way Machinery Company of Dallas, Texas, withdrew their bids and bid bonds, and said letting was closed.

"About a month after the bids and bid bonds had been withdrawn as mentioned hereinabove, the commissioner of Precinct No. 4 on or about March 1, 1941, signed a 'purchase order' with the Hi-Way Machinery Company of Dallas, Texas, for a motor grader costing approximately $6000.00 and secured the signatures of all the other commissioners to said purchase order; and on or about March 8, 1941, the commissioner of Precinct No. 2 signed a similar 'purchase order' with said Hi-Way Machinery Company for a similar motor grader costing about $6000.00 and secured the signatures of all the other commissioners to the same.

"When the Commissioners' Court met on March 10, 1941, the County Judge told the commissioners that the court could not approve the two above mentioned 'purchase orders', for the reason that said purchases were not made in compliance with the statutes of this State requiring that said purchases be made upon competitive bids after proper advertisement therefor.

"The Commissioners' Court then on March 10, 1941, authorized the advertisement for bids for the purchase of certain road machinery, towit:  two motor graders, which advertisement stated that warrants not to exceed $4000.00, to become due and payable on April 15, 1942, and bearing not to exceed three per cent interest from date, would be issued in part payment for said machinery, and that the Commissioners' Court would meet on March 29, 1941, at ten o'clock A. M. for the opening of bids and the letting of contracts for the purchase of said machinery.

"On March 24, 1941, which was prior to the date set for the opening of said bids and the letting of contracts thereon, the Hi-Way Machinery Company of Dallas, Texas delivered a motor grader to the Commissioner of Precinct No. 4 with the inscription 'Cherokee County, Precinct No. 4' on its side, and also delivered a motor grader to the Commissioner of Precinct No. 2 with the inscription 'Cherokee County, Precinct No. 2' on its side, both of which motor graders were identical in specification to the motor graders described in the 'purchase orders' signed with said Hi-Way Machinery Company on or about March 1, 1941, and on or about March 8, 1941, as aforesaid, and also identical in specification to the two motor graders described in the advertisement for bids which set March 29, 1941, as the date for the opening of bids and the letting of contracts thereon."

"When the Commissioners Court met on March 29, 1941, for the opening of said bids covering the two motor graders and the letting of contracts thereon, it was found that the Hi-Way Machinery Company of Dallas, Texas, had submitted a bid for two motor graders at the same prices called for in the "purchase orders" it had previously secured. The County Judge again stated to the Commissioners that said purchases were not made in compliance with the statutes of this State requiring that such purchases be made upon competitive bids after proper advertisement therefor, and that the Commissioners' Court had no authority to ratify a purchase made contrary to said statutes. In addition to the above facts it might be noted that the assessed valuation of taxable property in Cherokee County according to the last approved tax roll was $13,032,000.00.

"Since the above facts show that "purchase orders" were signed by the Commissioners for said two motor graders, each costing about $6000.00, prior to advertisement for bids thereon, and that said two motor graders were delivered by said Hi-Way Machinery Company to the Commissioners of Precincts Numbered 2 and 4 prior to the date set in the notice to bidders for the opening of said bids and the letting of contracts thereon, it is the opinion of the writer that said purchases or attempted purchases of the two motor graders were not made in compliance with the statutes of this State requiring such purchases by the County to be made upon competitive bids after proper advertisement therefor. Article 1659 and Article 2368a, Revised Civil Statutes of Texas.

"And it is also the opinion of the writer that if these purchases of the two motor graders were made in violation of the statutes of this State requiring such purchases by the County to be made upon competitive bids after proper advertisement therefor, the Commissioners' Court was without authority to ratify said purchases. Wyatt Metal & Boiler Works v. Fannin County (Tex. Civ. App.) 111 S. W. (2d) 787; Limestone County v. Knox (Tex. Civ. App.) 234 S. W. 131.

Hon. J. W. Summers, page 4


"Upon the basis of the facts hereinabove detailed, please advise me your opinion upon the following questions;

"1. Were said two motor graders purchased in compliance with the laws of the State of Texas?

"2. If not, has the Commissioners' Court the authority to ratify said purchases and issue warrants in payment therefor?

"3. Has the Commissioners' Court, under any future advertisement, legal authority to purchase said two motor graders as long as same are in the possession of said two Commissioners and in Cherokee County?"

Article 1659, Vernon's Annotated Civil Statutes, reads as follows:

"Supplies of every kind, road and bridge material, or any other material, for the use of said county, or any of its officers, departments, or institutions must be purchased on competitive bids, the contract to be awarded to the party who, in the judgment of the commissioners court, has submitted the lowest and best bid. The county auditor shall advertise for a period of two weeks in at least one daily newspaper, published and circulated in the county, for such supplies and material according to specifications, giving in detail what is needed. Such advertisements shall state where the specifications are to be found, and shall give the time and place for receiving such bids. All such competitive bids shall be kept on file by the county auditor as a part of the records of his office, and shall be subject to inspection by any one desiring to see them. Copies of all bids received shall be furnished by the county auditor to the county judge and to the commissioners court; and when the bids received are not satisfactory to the said judge or county commissioners, the auditor shall reject said bids and re-advertise for new bids. In cases of emergency, purchases not in excess of one hundred and fifty dollars may be made upon requisition to be approved by the commissioners court, without advertising for competitive bids."

Hon. J. W. Summers, page 5

Section 2 of Article 2368a, Vernon's Annotated Civil Statutes, reads in part as follows:

"No county acting through its Commissioners' Court, and no city in this State, shall hereafter make or enter into any contract or agreement for the construction of any public building, or the prosecution and completion of any public work requiring or authorizing any expenditure in excess of Two Thousand Dollars ($2000.00), creating or imposing an obligation or liability of any nature or character upon such county, or any subdivision of such county, or upon such city, without first submitting such proposed contract or agreement to competitive bid:. . . .

"Any and all such contracts or agreements hereafter made by any county or city in this State, without complying with the terms of this Section, shall be void, and shall not be enforceable in any Court of this State, and the performance of same and the payment of any money thereunder may be enjoined by any property taxpaying citizen of such county or city."

It is clear that from the facts stated in your letter the commissioners' court did not comply with the above mentioned statutes. Therefore, in view of the above mentioned statutes, your first question is respectfully answered in the negative.

With reference to your second question, your attention is directed to the case of Wyatt Metal and Boiler Works v. Fannin County, 111 S. W. (2d) 787, and authorities cited therein. This case among other things holds in effect that a county commissioners' court has no authority to ratify a purchase of goods made in violation of statutes requiring competitive bids. This case further holds in effect that where the county commissioners bought culverts from a manufacturer without advertising for bids and the county auditor refused to approve the manufacturer's claim, and in order to validate such claim the county advertised for bids on "Cooper Mo-Lyb-Denum Iron Culverts' and where the same manufacturer's bid was accepted an identical number of culverts of the same kind were ordered by the commissioners' court and delivered pursuant thereto, it was found that the transaction was a fraudulent attempt to ratify the original contract of purchase. We quote from the above mentioned case as follows:

Hon. J. W. Summers, page 6

"It is clear that from the passage of these acts it was the intent of the Legislature to declare a public policy. That such a policy is wise is evidenced by the universality of such statutes found in the laws of Congress and of all the state Legislatures. These purchases having been made in violation of the provisions of the articles requiring competitive bids, the court was without authority to ratify same, for this would grant them a power to do something indirectly they could not do directly. Stephens County v. H. C. Burt & Co., Tex. Civ. App., 19 S. W. 2d. 951; Wyatt Metal & Boiler Works v. Lipscomb, supra; Limestone County v. Knox, Tex. Civ. App., 234 S. W. 131; Rue v. Missouri Pac. Ry. Co., 74 Tex. 474, 8 S. W. 533, 15 Am. St. Rep. 852; State Nat. Bank of El Paso v. Fink, Tex. Civ. App., 24 S. W. 937; 11 Tex. Jur. p. 643, ⦶102; Layne-Western Co. v. Buchanan County, 8 Cir., 85 F. 2d 343, 349. Layne-Western Co. v. Buchanan County, supra, discusses the power of a governmental division to ratify a contract. That opinion quotes from Mullins v. Kansas City, 268 Mo. 444, 188 S. W. 193, as follows: 'It is plain that to allow such a doctrine upon a contemporaneous matter to be successfully asserted in the teeth of a statute which forbids, and of which statute plaintiff must be held to know, would be against public policy. * * * Officers of municipalities are not general agents; they are special agents, whose duties are set forth in the statutes which create them and which define their powers, and of these statutes, and therefore of these officers' powers, the public which deals with them must take notice and govern themselves accordingly. * * * Vain and futile would Constitution and statutes and charter be, if any officer of the state, or of a county, or of a city or other municipality, could follow them only when he saw fit. If by estoppel such salutary provisions, enacted with wise foresight as checks upon extravagance and dishonesty, can be utterly abrogated at will by any officer, such provisions then subserve no purpose, and the public corporation has no earthly protection against either greed or graft."

In view of the above mentioned authorities, your second question is answered in the negative.

In reply to your third question you are advised that it is the opinion of this Department that the commissioners' court has the legal authority to advertise and purchase the two mentioned motor graders, provided, that said court strictly complies with the above mentioned statutes. The fact that the graders are in the possession of the commissioners in said county is immaterial. We think that the above mentioned proceedings of the county is wholly void and the status of the county relative to the motor graders in question is the same as if no action whatsoever had been taken by the county, and as above stated, in order to purchase said motor graders the commissioners court must strictly comply with the above mentioned statutes.

Trusting that the foregoing fully answers your inquiry, we are

APPROVED APR 23, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Ardell Williams
Assistant

AW:AMM

