(Surrogate's Court, Genesee County.    December, 1897.)

1. STATUTE—REPEAL OF PART—DEVISE TO CORPORATION.

    The membership corporations law of 1895, which, in its schedule of statutes repealed, recites, "1848—chapter 319. All except section 6," does not thereby make said section 6 part of the act of 1895, and applicable to corporations organized thereunder; but its provisions, "Any corporation formed under this act shall be capable of taking * * * by virtue of any devise or bequest, * * * provided * * * no such devise or bequest shall be valid in any will * * * not * * * executed at least two months before the death of testator," are thereafter applicable only to those corporations which had been organized under the act of 1848, which was for incorporation of benevolent, charitable, scientific, and missionary societies.

2. MEMBERSHIP CORPORATION—COLLEGES.

    A college is not a membership corporation, within the membership corporations law of 1895 and the general corporation law of May 18, 1892, classifying the different kinds of corporations into municipal, stock, nonstock, and mixed, and subdividing nonstock corporations into religious or membership corporations; the university law of April 27, 1892, which, like

the two other and later acts, was the work of the revision commissioners, having provided a complete system for incorporation of colleges.

**3. CORPORATION LAW—CONSTRUCTION—BEQUESTS.**
   The general corporation law of May 18, 1892 (section 11), declaring every corporation empowered to acquire by devise or bequest, "subject to such limitations as may be prescribed by law," does not mean that every such limitation shall apply to every corporation, but merely that each class of corporations shall be subject to such limitations as pertain to that class.

**4. DEVISES TO CORPORATIONS—PUBLIC POLICY.**
   The chartering during the year of 1897, without any restrictions as to their power to take by devise or bequest, of several institutions which might have been incorporated, under Act 1848, c. 319, for incorporating benevolent, charitable, scientific, and missionary societies, section 6 of which provided that any corporation formed under the act could take by devise or bequest, provided the will had been executed at least two months before testator's death, shows that it was not intended by membership corporations law of 1895, which included, in its schedule of repealed statutes, Act 1848, c. 319, "all except section 6," to thereby make it the public policy of the state that corporations of that nature should not thereafter take under wills executed within such two months.

**5. SURROGATE'S COURT—JURISDICTION.**
   Code Civ. Proc. § 2624, providing, if a party puts in issue before the surrogate the validity of a bequest, the surrogate shall determine the question, gives him jurisdiction as to a bequest, though validity of a devise made by the will depends on the same questions.

Proceedings on probate of the will of William Lampson, deceased, to determine validity of a bequest.

William R. Crofoot (William C. Watson and Walter H. Smith, of counsel), for executor.

Wilson S. Bissell and Martin Carey, for Yale University.

Myron H. Peck, Jr., and Frederick S. Randall, for contestant Laura Ann Brooks.

Arthur E. Clark, Eugene L. Bushe, Edwin McKnight, P. B. Hulett, and David J. Bissell, for heirs at law.

NORTH, S.    William Lampson, the testator, died February 14, 1897.    On the 21st day of December, 1896, less than two months before his death, he executed the will which is the subject of the present controversy.    Decedent was a bachelor about 56 years old.    His nearest relative is an aged aunt, residing at St. Paul, Minn., and who would be entitled in case of intestacy, or in the event that any bequests should be held invalid, to the entire unwilled personal estate.    His heirs at law consist of this aunt and more than 50 descendants of deceased uncles and aunts, both on the side of the father and of the mother of testator.    The personal property is of the value of about $400,000, and the real estate is worth from $75,000 to $125,000.    The entire estate, excepting about $35,000, is given to Yale University, the disposing clause beginning:    "I give and bequeath unto my alma mater, the corporation of Yale College."    On the day of the return of the citation for probate, appearances were entered in behalf of a large number of the heirs, and answers were filed, containing objections in the form usual in cases of contested probate, alleging undue influence and lack of testamentary capacity.    The answers also put in issue the legality of the bequests to Yale University, and the decision of this court was invoked, under the provisions of section 2624 of the Code of Civil

49 N.Y.S.—37

Procedure, as to the legality of these bequests. Upon the hearing, the contest was abandoned so far as the questions of capacity and undue influence were concerned, and the contestants are now in court solely with respect to the validity of the bequests last referred to.

Upon this question only Mrs. Brooks, the aunt, is directly interested, for the reason that the statute gives to the surrogate's court no jurisdiction to determine the validity of any devise of real estate. The result of this, as all parties concede, is that the will must be admitted to probate, and letters testamentary issued to the executors in the manner provided for by the will. In case the courts shall decide the bequests to Yale valid, such decision will, although indirectly, effectually dispose of the validity of the devise, since the same principle would apply in the disposition of the real estate as in the case of personal property. Should the provisions for the university be held upon appeal from this decision to be invalid, the heirs at law will have their appropriate remedy to gain possession of the real estate, and such remedy will be unaffected by the fact that the will has been admitted to probate. Chapter 128 of the Laws of 1881 authorizes Yale College to take real property by gift or devise within this state.

The sole ground upon which the bequests to Yale are assailed is that the will was executed less than two months before the death of testator, in contravention, as is claimed, so far as the bequests are concerned, of a statute of this state. The large amount of property involved, the somewhat unusual attention which this case has attracted, the great care and labor bestowed by counsel in the preparation of exhaustive briefs and in the very able oral arguments, have rendered it the duty of the court to give to the case the most careful examination and study. These considerations, as well as the fact that counsel have united in the request, have led me to state quite fully the reasons for my decision.

Certain statutes of this state and one decision of the court of appeals must at the outset be freely quoted, as upon these statutes and this decision counsel on both sides largely rely. They are, without doubt, decisive of the controversy. Chapter 319 of the Laws of 1848 is entitled "An act for the incorporation of benevolent, charitable, scientific and missionary societies." Section 1 of this law prescribes the method by which corporations may be formed, and enumerates the purposes for which societies may be incorporated under the act. Section 6, the provision which has given rise to most discussion, has never been amended. Reference will necessarily be made to this section so many times that I shall continue to refer to it merely as "section 6," without further statement as to the chapter or the year of its enactment. It is here given in full:

"Sec. 6. Any corporation formed under this act shall be capable of taking, holding or receiving any property, real or personal, by virtue of any devise or bequest contained in any last will or testament of any person whatsoever. the clear annual income of which devise or bequest shall not exceed the sum of ten thousand dollars; provided, no person leaving a wife or child or parent shall devise or bequeath to such institution or corporation more than one-fourth of his or her estate after the payment of his or her debts, and such devise or bequest shall be valid to the extent of such one-fourth, and no such devise or bequest shall be valid in any will which shall not have been made and executed at least two months before the death of the testator."

On the 27th day of April, 1892, the university law was passed. This law, like the numerous other enactments which have been prepared by the statutory revision commission of this state, gathered together, with many additions and modifications, the laws which had been passed from time to time on this subject, and which were scattered through the statute books. In this way one comprehensive and harmonious statute took the place of a large number of imperfect laws and amendments, often difficult to find, and in some measure conflicting. By the provisions of this law, 66 acts of the legislature, passed in almost as many different years, besides considerable portions of the Revised Statutes, were repealed, the repealed portions having been, so far as was desired, re-enacted in the new law. The statute defines the term "university" as meaning the University of the State of New York; and section 24 of the act provides:

"The institutions of the university shall include all institutions of higher education which are now or may hereafter be incorporated in this state."

On the 18th of May, 1892, the general corporation law was enacted. As its name indicates, this law is general in character, classifying the different kinds of corporations, providing for the methods of formation, the limitation of powers, the acquisition of property, besides various other matters such as would naturally be included in a law of this description. Section 11 is in part as follows:

"Grant of General Powers. Every corporation as such has power, though not specified in the law under which it is incorporated: * * * 3. To acquire by grant, gift, purchase, devise or bequest * * * subject to such limitations as may be prescribed by law."

Among the kinds of corporations provided for by the general corporation law of 1892 are membership corporations; and in 1895 the legislature, following out the scheme of the revision commission, passed the membership corporations law. At the end of this act, as in the case of the other laws prepared by the commission, there is appended a schedule of laws repealed. This schedule includes 114 acts of the legislature repealed in full, and 18 repealed in part. In the latter class is found the act hereinbefore referred to for the incorporation of benevolent, charitable, scientific, and missionary societies, which is set down in its chronological order in the schedule as follows: "1848—chapter 319. All except section 6."

The decision to which reference has been made, and which is by common consent the leading authority bearing upon the present controversy, is Hollis v. Theological Seminary, 95 N. Y. 166. This case was decided in 1884. The will of testator gave a bequest to Drew Theological Seminary, a corporation formed under the laws of New Jersey; and another bequest to the Wesleyan University, a Connecticut corporation. It was contended in behalf of certain relatives of the testator that these bequests were void, under the provisions of section 6, referred to, by reason of the fact that the will was made less than two months before death. It would appear from this that the questions presented were identical with those raised in the present case, and, unless satisfactory and conclusive reasons to the contrary are shown, that the decision of the court of last resort must control at this time. The counsel for Yale University rely so confidently

upon this decision as sustaining their position, and counsel for contestants, realizing the force of this claim, has attempted so ingenious a distinction between this case and the one at bar that I have thought best at this time to quote largely from the opinion of the distinguished jurist who rendered the judgment of the court. The contention in behalf of contestants is based upon that very brief portion of the opinion which for convenience and greater perspicuity I have italicized. Referring to section 6, the opinion states:

"The whole of that section clearly has exclusive reference to corporations formed under that act, and the prohibition contained in the latter clause of the section is simply aimed at devises and bequests made to such corporation. As there was not a similar prohibition in the charter of either of these corporations, these bequests cannot be condemned by the letter of any statute. So much is clear."

The opinion then proceeds:

"The general rule is that one may do with his property as he pleases. He may dispose of it by will in any way that suits his fancy or his judgment. He may give it all to strangers, and thus disinherit his relatives. He may give it all to natural persons or to corporations capable of taking. He may give it directly or create trusts which the law allows; and this general power of disposition he possesses down to the last hour of conscious, intelligent existence. It is not against public policy to allow gifts to charitable, benevolent, scientific, or educational institutions. The law allows and encourages such gifts, and those who make them are commended as the benefactors of their race. Such institutions, dotted all over our land, to succor, elevate, educate men, and ameliorate their condition, are distinguishing features of our modern civilization. It is just as praiseworthy to give to these institutions by will, within two months before a testator's death, as at an earlier date. There is nothing essentially evil or of evil tendency in gifts thus made. They do not disturb the public weal. But it so happened that testators in the imminence of death, unduly influenced by hopes or fears or by importunities of interested parties, sometimes gave improvidently to such institutions, disregarding the claims of near relatives, forgetting the maxim that 'charity begins at home'; and hence, when the legislature came to frame a general law for the incorporation of these institutions by any persons who chose to associate for that purpose, it devised the limitations found in the act of 1848. The limitations, as above stated, applied only to corporations formed under that act, and those were corporations for 'benevolent, charitable, scientific, and missionary purposes.' * * * In one of the opinions delivered in the case of Kerr v. Dougherty, 79 N. Y. 327, it was said that between that year and the year 1870 nearly 150 acts were passed creating new corporations, or extending and enlarging the powers of old corporations, similar to those named in the act of 1848, and that the two months' limitation was imposed upon but few of such corporations; and since 1870 similar action has been taken many times by the legislature. How can it be said, then, that there is any general public policy as to the two months' limitation? When the legislature has desired its imposition, it has imposed it, and thus far indicated its policy. * * * If such was to be the general policy of the state, why was not the two months' limitation also made applicable in terms to all such corporations? * * * That cannot be enforced as public policy by the courts which the legislature one day prohibits in some cases, and another day permits in other cases. *If there were a general law in this state that no bequest to any of such corporations should be valid unless contained in a will made at least two months before the death of the testator, that would indicate a general public policy which the courts of this state would enforce against foreign corporations which might come into this state, although such a limitation was not imposed by the laws creating them.* * * * There is no policy outside of the statute which condemns such wills. The policy is found only in the statute. * * * If these appellants had been domestic corporations, the two months' limitation would not have applied to them, and so it cannot be applied to them as foreign corporations. They must stand here in this case upon.

the same footing as if they had been created here. It would be a bold claim for any one to make that the courts, in the enforcement of a supposed public policy, would apply this limitation to the numerous domestic corporations to which the statute law has not applied it, and no more can it be applied to foreign corporations without the sanction of law. * * * I conclude, therefore, that the two months' limitation, contained in the act of 1848, applies exclusively in terms to corporations formed under that act, and that there is no public policy established, either by statute law or judicial decisions or general consent, which authorizes us to enforce that limitation against domestic corporations which are not expressly subjected to it by statute, and hence that it cannot be enforced against foreign corporations which are authorized by their charters to take property by devise or bequest free from a similar limitation in the state of their creation."

These statutory provisions and the decision quoted form the foundation of contestant's claim. It has seemed to me that any examination of the questions involved in this case, however thoroughly entered into, made from ordinary standpoints, must result in the conviction that the claim made in behalf of the next of kin of testator finds complete refutation in the statutes and decision relied upon in its own support. Arguing from premises not commonly to be conceived of, to say the least, the ingenuity of the learned counsel for the contestant has wrought out a theory by which it is maintained, and upon which an able and elaborate argument is based, that the expression of opinion by Judge Earl in the Hollis Case, in the sentence which I have italicized, when applied to the statutes which have been quoted, afford sufficient ground for adjudging the bequests to Yale University invalid and illegal, because made two months before the decease of testator.

The claims advanced by counsel, although not categorically stated by him in his brief, seem to me to be fairly stated as follows: (1) The repealing schedule of the membership corporations law having preserved section 6 of the act of 1848, while repealing the rest of the law, this section is to be deemed as ingrafted upon and made a part of the law which thus saved it from repeal, the language employed by counsel being: "Section 6, remaining unrepealed by this act, is apparently left as a part of the membership corporations law." (2) The general corporation law of 1892, by providing that corporations formed under it might take by devise or bequest "subject to such limitations as may be provided by law," must now be construed as including section 6 of chapter 319 of the Laws of 1848 as among "the limitations which may be provided by law." (3) The court of appeals, in the case of Hollis v. Theological Seminary, 95 N. Y. 166, having decided (a) that the restrictions contained in section 6 only applied to corporations organized under that law; (b) that the said section had no application to corporations formed in other states; (c) that bequests to foreign corporations for humanitarian purposes were not against public policy; and that there was no public or legislative policy against bequests made within two months of death,—the legislative policy of the state underwent a radical change in the year 1895, such change being evinced by the retention of section 6 at the same time the remaining sections of the same act were repealed, thereby rendering that section "a part of the membership corporations law." (4) All colleges and universities, being nonstock corporations, are therefore, under the classification laid down in the general corporation law, membership corporations,

and are to be classed among the corporations provided for by the membership corporations law of 1895. The language employed by counsel in his brief is: "The legatee and devisee in this case is a nonstock corporation, and comes under the general head of membership corporations." (5) Yale University is therefore such an institution as, if organized under the laws of the state of New York, would be a membership corporation. (6) The other sections of the act of 1848 having been repealed, and section 6 having been saved by the act of 1895, and ingrafted thereon, said section must be construed by the courts as freed from the limitations of the sections which formerly environed it, and as having become a law of general application to all corporations of the kind provided for by the membership corporations law. (7) A general public policy having been evinced or ordained by the transfer of section 6 from the act of 1848 to the act of 1895, the expression employed by Judge Earl in the Hollis Case may now be resorted to; and Yale University, being such a corporation as under the laws of New York "comes under the general head of a membership corporation," must now yield to the new and changed public policy of this state, and may no longer take by devise or bequest contained in a will executed less than two months before death.

Stated now more concisely, and condensed into a single proposition, the contestant, having assumed for the dictum in Hollis v. Theological Seminary, all the weight and authority of a deliberate decision, seeks to maintain that the legislature has now enacted "a general law that no bequests to any of such corporations should be valid unless contained in a will made at least two months before the death of the testator." The proposition that section 6 has become "a part of the membership corporations law," and has acquired added force by the manner of its retention, and by virtue of the repeal of the remainder of the act of 1848, is vital to the contention made by the contestant; for it is only upon this theory that the force of the decision in Hollis v. Theological Seminary can be met or overcome. I am wholly unable to discover any reason or authority for the claim that this section is to be given any different force or effect under or by reason of the circumstances of its repeal than it would have been entitled to had a separate and distinct law been enacted for the sole purpose of repealing chapter 319 of the Laws of 1848, excepting section 6. The doctrine is new and surprising that, where an act of the legislature is all repealed except one section, such section becomes, by virtue of the exception, a constituent part of the repealing law, or obtains any new or different force or effect by reason of the obliteration of the sections which had formed part of the original act. The learned counsel for the contestant, in a brief evincing the greatest labor and research, wholly fails to cite a decision or authority promulgating or suggesting any such doctrine, or containing an intimation that such has ever been recognized as the law. On the other hand, how obvious is the purpose for the retention of section 6. A large number of societies had been organized under this act during the course of 47 years. All were subject to the provisions against the validity of bequests made within two months of death. No good reason seemed to exist why these societies should be relieved from the restriction, which by the

very terms of their organization had been assented to. Section 6 begins with the words, "Any corporation formed under this act." The "act" having been repealed, and the section left, as counsel for proponents describes it, "floating and unattached," it might be said to have no meaning, and its retention to serve no purpose, except for the fact that the opening words of the section put the investigator to the inquiry as to what act is referred to, and his research is at once rewarded by the discovery that it is an act for the formation of benevolent, charitable, scientific, and missionary societies. It would be further discovered that the section which had been saved from repeal, by its express words, referred to corporations which could no longer be formed because of the repeal; and the one natural and logical reason which would be assigned for its retention—the one possible office to be fulfilled by it—would be to continue in force the restrictions which it contained as applied to corporations already formed under the act. The repeal of the law did not repeal the societies to which it had given birth. It simply prevented the organization of any more corporations under the law, and the preservation of the restrictive section simply held the societies already organized to the basis upon which they were originally formed. There is the highest authority for the doctrine that, for the purpose of determining what force shall be given to portions of a statute excepted from repeal, resort should be had to the act itself as it stood at the time of the repeal, and the doctrine is of the utmost value in the decision of this case, and in meeting, as it seems to me it does, the arguments made in behalf of contestant.

In Endlich on the Interpretation of Statutes it is said, at section 49:

"Where a part of an act has been repealed, it must, although of no operative force, still be taken into consideration in construing the act."

In Bank for Savings v. Collector, 3 Wall. 495–513, it is said:

"Although the proviso is repealed, still it is proper to resort to it * * * as affording a legislative exposition of what is meant by the phrase 'engaged in the business of banking,' as employed in the first clause of the section under consideration."

In Ex parte Crow Dog, 109 U. S. 556–561, 3 Sup. Ct. 396, 399, decided by the supreme court of the United States in 1883, the opinion states:

"Nevertheless, although the section of the act of 1834 containing the definition of that date has been repealed, it is not to be regarded as if it had never been adopted, but may be referred to in connection with the provisions of its original context which remain in force, and may be considered in connection with the changes which have taken place in our situation, with a view of determining from time to time what must be regarded as Indian country where it is spoken of in the statutes. It is an admitted rule in the interpretation of statutes that clauses which have been repealed may still be considered in construing the provisions that remain in force."

Another claim made by counsel for contestant is that institutions of the character of Yale are membership corporations, as defined by existing statute. This theory is quite necessary to his contention, in view of the claim made for section 6 as a constituent part of the membership law, and of the analogy sought to be made between Yale and educational institutions of this state, although, on the other hand, to concede the claim could scarcely prejudice the position of prope-

nents.   The argument made is a strong one, and at first thought does not seem readily assailable.   The claim is based on the classification made by section 2 of the general corporation law.   This law provides that corporations shall be of four general kinds,—municipal, stock, nonstock, and mixed.   Each of these is again subdivided, the statute providing that a nonstock corporation shall be either a religious corporation or a membership corporation.   Following this provision literally, a college or university would appear to be a membership corporation.   But the revision commission digressed widely from this classification in the later bills submitted to and enacted by the legislature.   To illustrate:   The statute referred to provides that mixed corporations shall be either cemetery, library, co-operative, board of trade, agricultural, or horticultural corporations.   This classification has since been wholly ignored by the legislature, and it is doubtful if there is now such a thing as a mixed corporation, as all the classes above enumerated are apparently provided for in other ways.   Counsel for contestant, in his brief filed in reply, says: "The mixed corporation has been lost in the shuffle."   As I have already shown, even before the enactment of the general corporation law, the university law had been passed, providing a comprehensive scheme for the formation and government of colleges and universities, and directing in explicit terms how all such institutions should be incorporated, by methods wholly outside the general or membership corporations laws.   The university law was the work of the revision commission, and it seems apparent that having by the act of April 27, 1892, provided a complete system for the incorporation of colleges and universities, it was not intended by the later act of 1895 to include such institutions of learning along with societies so wholly different in character as those provided for by the membership corporations law.   The general plan laid out by the revisers when they began their work has evidently been modified, but, as has been well suggested by counsel for the university, they have not always remembered, when a change was made and a new plan substituted, to go back and pick up all the threads, follow out the subject in its various ramifications, and make the change complete, but have been content to make the change in the general plan, leaving the little inconsistencies to be explained by the text itself.

Neither do I believe, in the light of the comprehensive and complete system of laws which has existed in this state from an early date providing for the incorporation of institutions of learning,—a system which has now culminated in the university law of 1892,—that the limitations contained in the act of 1848 could be extended by analogy to Yale, even were Yale a domestic corporation.   When the will in question was made, in December, 1896, the act of 1848 had been repealed except as to section 6, and the only method for incorporating a college or university in this state under a general law would have been by virtue of the university act.   So far as I can find from an examination of the act of incorporation of every college or university of note within this state, aided, as I have been, by the instructive brief of counsel for Yale, not one has been formed under the act of 1848, and it may well be doubted whether, with the complete and harmoni-

ous system of law in this state for the formation of educational institutions, and the stringent power of supervision which the law places in the hands of the regents of the university, the legislature ever intended that there should be in existence at the same time another law under which similar institutions might be formed, free from these restrictions, and at liberty to confer degrees and award diplomas upon such terms and subject to such regulations only as the institutions might see fit to impose. I have not overlooked chapter 367 of the Laws of 1882, which was probably passed rather to prevent apprehended evil than as a distinct recognition of the class of institutions therein referred to. This entire question is argued out most exhaustively by the learned counsel for Yale in their able and scholarly brief. It is full of force, and yet, with the view I have taken of this case, its importance must be subordinated to considerations which place the decision on what seems to me the strongest and safest ground possible. It is sufficient to say that Yale University is not a domestic corporation. It was not incorporated under the act of 1848. There is no public or legislative policy against bequests made within two months of death. Yale is not within the scope of the statute prohibiting such bequests. Section 6 has no greater force than before the repeal of the other sections of the same law. The phrase used in the general corporation act, "subject to such limitations as may be prescribed by law," has no application to this case. It would only add another column to the structure if it were to be said, as counsel for the university claim, that purely educational institutions were never intended to be incorporated, and in no single instance have been incorporated, under the act of 1848. However strong the argument of counsel, and however correct their conclusions, I do not deem it best to base my decision on this ground.

The language of section 11 of the general corporation law which I have quoted does not mean that every "limitation which may be provided by law" shall apply to every corporation. Such a construction would lead to endless confusion, and would render the recent important legislation of the state a mass of inconsistency. It is entirely clear that the words just quoted from the statute imply that each class of corporations shall be subject to such limitations as pertain to that class, and to such limitations only. If the legislature of the state of New York, or the learned and experienced commissioners of statutory revision, desired or intended to effect so radical, important, and far-reaching a change in the law as that claimed by counsel for contestants, the result would have been accomplished, not by the complex, uncertain, and sinuous methods which it is claimed have brought about the result, but by a direct, clear, and unequivocal enactment that corporations or certain designated corporations might no longer take property by a will executed within two months of death, and that foreign corporations should be subject to the same rule. The steadily progressive character of legislation in this state favoring humanitarian societies of all kinds, whereby restrictions have been removed, powers enlarged, amounts which might be taken by gift or by will increased, renders it highly improbable that the legislature has taken the backward step claimed by contestants. No such construction

should be placed upon the law unless clearly expressed by statutes, and surely there is no such clear expression.

The case of Vanderpoel v. Gorman, 140 N. Y. 563, 35 N. E. 932, is much in point. There is a general law in this state forbidding transfers or assignments of property by corporations in contemplation of insolvency. The court decided that, although the law was of general application to all domestic corporations, yet it could not be applied to a corporation doing business within this state, but organized under the laws of another state. Judge Peckham, writing the opinion of the court, says:

"It is urged that such a policy is to be found in this same statute, even though it in terms applies only to domestic corporations. * * * It is thus seen that there are differences of a marked character between a domestic and a foreign corporation in relation to this subject. The differences are so marked that the statute regarding domestic corporations can furnish no proof as to the existence of a public policy which, in the case of foreign corporations, should stand in the place of and be equivalent to that statute."

It is worth while to notice the fact that the effect of a general statute of this state upon a foreign corporation was the precise point in controversy in the case just cited. Judge Earl concurred in the decision and in the opinion, and the language employed by him in the Hollis Case cannot be said to weigh against the positive decision in Vanderpoel v. Gorman. There is no real conflict between the two opinions. See In re Prime, 136 N. Y. 360, 32 N. E. 1091; Cole v. Frost, 51 Hun, 578, 4 N. Y. Supp. 308; Id., 117 N. Y. 656, 22 N. E. 1133.

The argument has been advanced by contestant that the courts have in several cases extended the restrictions of section 6 to corporations not formed under the act of 1848. These cases were decided before the case of Hollis v. Theological Seminary, and are commented upon in the latter case. The doctrine of the Hollis Case is in no respect antagonistic to the earlier cases, and the distinction between them is perfectly clear. In Lefevre v. Lefevre, 59 N. Y. 434, the will contains a bequest to a charitable society in New York incorporated in 1849. The charter of the society gave it power "to receive by gift or devise, in the same manner and subject to the same restrictions as provided in the general laws for the incorporation of religious and benevolent societies." The will in controversy was made within two months before death, and the decision is merely to the effect that the act of 1848 was the only law which could have been referred to in the charter; so that it was clearly the deliberate intention of the legislature to make the charter of the society in question subject to section 6 of the act of 1848. The cases of Kerr v. Dougherty, 79 N. Y. 327, and Stephenson v. Short, 92 N. Y. 433, and the later cases of Fairchild v. Edson, 154 N. Y. 199, 48 N. E. 541, and Trust Co. v. Smith, 82 Hun, 494, 31 N. Y. Supp. 519, are to the same effect, and follow the Lefevre Case.

I have already pointed out that the argument of contestant rests, as it appears to me, wholly upon the claim that recent legislation has so changed public policy with reference to bequests to corporations that the beneficiary under the will of Mr. Lampson must yield to that policy; and I have also shown that this claim depends on the expres-

sion of opinion in the italicized sentence in the Hollis Case.   And yet
it seems to me that the learned counsel has, by insisting upon this
claim, turned his own weapons against himself.   Again, quoting from
the Hollis Case, "That cannot be enforced as public policy which the
legislature one day prohibits in some cases, and another day permits
in other cases," let us see if the same alternating policy has not been
pursued since the enactment of the membership corporations law as
before.   This law was passed May 8, 1895, and this is the date from
which it must be claimed the legislative policy has been changed.
During the present year several corporations have been chartered by
the legislature under circumstances thoroughly repelling the idea that
there is now a general public policy on the part of the legislature
against bequests made within two months before death.   Chapter 99,
Laws 1897, incorporates the Sailors' Rest, in the city of New York.
This is clearly such an institution as might have been incorporated
under the act of 1848.   It is made capable of taking real and personal
property not exceeding $500,000, and no restriction is placed on the
manner of the devise.   Chapter 278 incorporates the Lucy A. Wood-
Rowe Memorial Association.   This is a charitable society, and is
authorized to take devises or bequests without limitation or restriction
except as to the amount.   Chapter 537 incorporates the House of
Providence, of Onondaga county.   This is a strictly charitable in-
stitution, and is authorized to take by devise or bequest with no limita-
tion except as to amount. ·  Section 5 of the act provides that the
corporation shall possess the general powers and be subject to the
general restrictions prescribed in the general corporation law.   Chap-
ter 285 incorporates Grace Institute, a charitable society.   The cor-
poration is authorized to take by devise or bequest, without limit or
restriction, the society being "subject to the liabilities of corporations
conferred by chapter 35 of the general law known as the 'General
Corporation Law.'"   Chapter 333 is interesting and instructive as
bearing on the question now at issue.   The Young Ladies' Christian
Association of the City of New York was incorporated by chapter 319
of the Laws of 1873.   Section 5 of the act of incorporation provided:
"The body corporate created by this act shall be capable of taking by
devise or bequest, subject to all provisions of law relating to devises
and bequests by last will and testament;" thus bringing it within the
doctrine of the case of Kerr v. Dougherty, 79 N. Y. 327, and the
other cases of like import, so that, as this society existed under its
original act of incorporation, it could not have taken by bequest under
will executed within two months of death.   The amendatory act of
1897, above referred to, struck out the restriction originally contained
in section 5, so that now the society may take by devise or bequest,
free from the restriction contained in section 6 of the act of 1848, and
the amendment did nothing else.   Chapter 257 of the Laws of 1896
affords a precisely similar case.   This was an amendatory act strik-
ing out the restrictive clause which, under the authority of Lefevre
v. Lefevre and Kerr v. Dougherty, would have brought the society
within the provisions of section 6, and leaving it free to take by be-
quest, without reference to the two-months limit.   To my under-

standing this law and the one last above referred to are of the utmost significance as repelling the claim that there is now a legislative policy against bequests made within two months of death, so powerful and far-reaching that the courts must extend it by analogy to an educational corporation of the state of Connecticut, containing no such restriction in its charter.

Among the laws just pointed out are two where the charter restricts the corporation formed thereunder to powers and liabilities conferred by the general corporation act, while five others contain no restriction. While I do not believe that the limitation can be traced through the membership corporations law back to the general corporation act, and through that act back to section 6 of the law of 1848, it is worth while to note that if it should be claimed that the restriction contained in these two charters referred to does in fact mean that the societies incorporated thereunder, being subject to the limitations contained in the general corporation law, are therefore subject to the provisions of section 6 of the act of 1848, then it necessarily follows, and the conclusion seems to me to be irresistible, that the omission of this restriction from the charters granted to the Lucy A. Wood-Rowe Memorial Association and the other societies similarly incorporated excludes them from any possible relation to the act of 1848, or any restriction or limitation by virtue of section 6. The counsel for contestant says in his brief: "The provisions of special charters of favored corporations are not to be considered on this question of the public policy of the state." In contract with this statement stands the opinion of Judge Earl in Hollis v. Theological Seminary, in which the fact that, since the act of 1848 was passed, a large number of institutions had been chartered by special acts, without being subjected to the restrictions of section 6, is pointed out as unmistakable evidence that no public or legislative policy existed which was opposed to bequests made within two months before the death of the testator. These recent acts of the legislature answer more fully than any mere argument could do the claim that it is now contrary to public policy to permit gifts to corporations when made by will executed within the two-months limit. Surely, "that cannot be enforced as public policy by the courts which the legislature one day prohibits in some cases, and another day permits in other cases."

But one more branch of the case need be discussed, and that is the point raised by counsel for the university that the devise of real property contained in the will is so inseparably connected with the bequest of personalty that this court may not exercise the power conferred by section 2624 of the Code, and determine the validity of the bequests. In view of the disposition I have made of the case, the question might be deemed unimportant, except for the fact that it is jurisdictional. I have examined it with the care which its importance demands, with the conclusion that this court has the power to determine the validity of the bequests under this will. Discussion need not be entered upon further than to say that, while I believe this court has full power to decide as to the legality of the entire bequest

to Yale University, there can be little doubt in any case with reference to the distinct gift of $150,000 to be devoted to the Lampson Lyceum.

I have not attempted to discuss this case in every aspect presented by the learned counsel for the contestant in his very able brief and oral argument. To have done so would have been to write a treatise, and yet that would afford no reason why the discussion should not be had if the case required it. The issue, after all, is one of statutory construction, and may be confined within narrow limits. The decision which has been reached seems to me the only one which can be rendered with due regard to legal principles, and without attributing to the legislature and the revisors a disposition to render complex and uncertain that which could as easily have been placed beyond controversy. I am fully satisfied that there has been no change in the legislative policy of this state with reference to the matters which have been discussed in this opinion, certainly none adding to the restrictions imposed upon charitable or educational bequests. I believe the purpose in retaining section 6 of the act of 1848 was as has here been pointed out, and that should the time ever come when the legislature shall see fit to further prohibit bequests made shortly before death, and to extend that prohibition to foreign corporations, it will not be done by complicated, tortuous, ambiguous, and uncertain methods, but rather by direct and clear statutory provision.

The bequests to Yale University contained in the will of testator are therefore adjudged valid. The will is admitted to probate, and letters testamentary will be issued to the executor and to the Mercantile Trust Company of the City of New York. This institution had been selected after consultation with the executor named in the will and with the university authorities, before objections were filed, and is satisfactory to all parties concerned. The designation by the surrogate of a trust company in the city of New York as executor was required by the terms of the will. Decreed accordingly.